## Armstrong's Administrator v. Sumne & Ratterman Company.

(Decided December 11, 1925.)

### Appeal from Kenton Circuit Court.

1.  Master and Servant—Knowledge Necessary to Render Master Liable for "Permitting" or "Suffering" Infant's Employment in Forbidden Service.—To render a master liable for death of infant riding with servant of defendant, under Ky. Stats., section 331a-1, providing that no child under 14 shall be employed, permitted, or suffered to work in enumerated instances, he must have actual or perhaps imputed knowledge of fact that infant is rendering service, as the etymological definition of the words "permit" and "suffer" imply and include knowledge on part of one so engaged of facts or things which he permits or suffers.

2.  Master and Servant—Knowledge of Servant Receiving Benefits of Services of Infant Held Not Imputable to Employer.—In suit by father under Constitution, section 241, and Ky. Stats., section 6, for death of infant son while riding with servant of defendant. based on alleged violation of section 331a-1, held that knowledge of driver receiving benefit of service of infant cannot be imputed to his employer, since driver had no implied authority to contract for or permit or suffer such service to be rendered by infant.

3.  Master and Servant—Act of Servant Must be Done in Furtherance of Master's Business to Render Master Liable.—For master to be liable for acts of servant, even when done within apparent scope of servant's authority, it must be done in furtherance of master's business and for and on his behalf and not for or on behalf of servant.

4.  Master and Servant—Master Held Not Liable for Death of Infant Riding with Driver.—In suit by father under Constitution, section 241, and Ky. Stats., section 6, for death of infant son while riding with servant of defendant, based on alleged violation of section 331a-1, evidence held to show that driver, in permitting infant to ride in his truck and paying him small sums from his own money for slight services infant performed was not acting in furtherance of master's business, and hence latter was not liable.

5.  Death—Contributory Negligence of Deceased Defense in Action Based on Violation of Child Labor Law.—In view of Constitution, section 241, held that, in action for death of infant based on alleged violation of Ky. Stats., section 331a-1, prohibiting employ-

ment of infants under 14 years, defense of contributory negligence of deceased infant is available to defendant as well as contributory negligence of parents of infant.

6.  Death—Contributory Negligence of Parents Defense in Action for Death of Child.—In action for death of infant while accompanying defendant's driver, in violation of Ky. Stats., section 331a-1, held that contributory negligence of parents of deceased infant, as well as that of infant, was available as defense.

GALVIN & TRACY and JOHN L. RICH for appellant.

ROBT. C. SIMMONS and A. A. RENDIGS, JR., for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and defendant below, Sumne & Ratterman Company, a corporation, is engaged in the wholesale milk business in Covington, Kentucky. One of the methods by which it gathers milk from the producers is by trucks driven by the employes who in the early mornings take the milk from the farmers in cans furnished for the purpose and deliver it to defendant's place of business and return with the same or other similar empty cans leaving them with the producer who fills them with milk to be handled the same way the next day. One of the gatherers of milk for defendant in the manner indicated was the defendant, Carson Casson, who resided at the time of the accident involved in this action in the town of Independence, in Kenton county, some eight or nine miles from Covington. He was a close neighbor to Edward Armstrong, the latter of whom had a son, J. B. Armstrong, who was an infant not quite 13 years of age. Casson had some children, among whom was a son about 11 years old, and young Armstrong frequently visited the Casson home and assisted young Casson in performing the chores for the household. The two boys were great friends and young Armstrong was a great favorite with the members of the Casson family, especially the father, who was the employee of the corporate defendant. Some time in September, 1923, and at his urgent request, young Armstrong began the practice of riding in the truck with Mr. Casson on that portion of his trip south of Independence while gathering up milk for the corporate defendant, and which trips were made early enough in the morning for the return to Independence in time to not interfere with young Armstrong's attending school; but on holidays when there was no school Armstrong would ride

on the truck with Casson on other parts of his trip and
sometimes go with him into the city of Covington, but
there is absolutely no proof that any of the managing
agents or officers of the corporate defendant had any
knowledge whatever of such practice.   On Saturday,
the 29th of December, 1923, Casson with young Armstrong
was returning in the truck from Covington to Independ-
ence with a lot of empty milk cans, and as they ap-
proached one of the customers from whom milk was
obtained and with whom they expected to leave one or
more of the cans young Armstrong, who was sitting on
the seat with Casson, suddenly left the seat and walked
on the running board to the bed of the truck in the rear,
stating that he would arrange the cans to be left with the
farmer whose house they were approaching, and almost
immediately Casson felt a jar of his truck and stopped it
within 25 feet, when he discovered that young Armstrong
in some manner had fallen on to the pike and his body
run over by the hind wheel of the truck, from which he
sustained injuries resulting in his death.   This action
was brought by his father as his administrator, pursuant
to the provisions of section 241 of our Constitution and
section 6 of our statutes, against Casson and his cor-
porate employer to recover damages for the decedent's
death, and the petition sought to fix liability upon de-
fendants upon two grounds, (1) that decedent was en-
gaged at the time of his death in a service prohibited by
section 331a-1, and that defendants were absolutely liable
because thereof, and, (2) that if not liable under ground
(1), then they were negligent at common law, since it
was charged that Casson for himself and as servant of
the corporate defendant failed to exercise proper care
and diligence for the safety of the deceased infant as an
invitee on the truck.   The answer denied all negligence
or liability and pleaded contributory negligence of de-
ceased in another paragraph and contributory negligence
of his parents in a third one.   Demurrers filed to those
two paragraphs were overruled with exceptions, and they
were then each denied and upon trial the jury, under the
instructions submitted to it by the court, returned a ver-
dict for the corporate defendant, the action having been
dismissed as to Casson.   Plaintiff's motion for a new
trial was overruled, followed by this appeal.

Before taking up the argument for a reversal of the
judgment it should be stated that young Armstrong on

his trips with Casson would occasionally perform light services, such as arranging the cans in the bed of the truck, and in that way assisted the latter in the performance of his duty of gathering the milk, and Casson occasionally paid decedent small sums of money averaging between $1.00 and $1.50 per week, which he said was not alone for the service performed by decedent in assisting him as employer for the corporate defendant, but because of friendship and also in compensation for services rendered in performing chores around Casson's house hereinbefore referred to.

It is vigorously as well as ably argued that the court should have sustained plaintiff's motion for a peremptory instruction to find for him, since under the proof, as is contended, defendant was absolutely liable under ground (1) *supra*. The statute under which that contention was made (section 331a-1) says: "No child under 14 years of age shall be employed, permitted or suffered to work in or in connection with any factory, . . . or in the distribution or transmission of merchandise or messages," &c. It is contended that under the evidence not only was the decedent *employed* by the corporate defendant contrary to the statute, which employment was effected by and through appellee's servant, Casson, and for which the latter compensated the decedent, but also that appellee because of the acts and conduct of its servant *permitted* and *suffered* the decedent to engage in the forbidden service. If, however, it should be held otherwise, it is then the contention of learned counsel for plaintiff that under the statute forbidding the permission or suffering of such service by an infant it was the absolute duty of appellee to see to it that no such service was rendered and that not having done so in this case, and the injury having been inflicted while the infant was so engaged, appellee became at once liable for all the damages sustained.

On the other hand, it is the position of learned counsel for defendant that decedent not having been employed by any authorized agent of his client, and the employment by the servant to the extent indicated not having been done for and on behalf of his client, but solely for the benefit of the servant, no liability attached because of an *employment by* appellee; and with equal emphasis he insists that his client can not be held liable for *permitting* or *suffering* the decedent to engage in any char-

acter of service on its truck when neither it nor any of its officers or agents possessing the requisite authority had any knowledge of the services being performed by the infant. The court by its instruction No. 1, partially adopted the view of defendant's counsel, but it went a step further and authorized a verdict for plaintiff if defendant or its agents "having charge and control of its business knew, or by the exercise of ordinary care and diligence could have known that the decedent J. B. Armstrong was engaged in helping defendant's driver, Casson," &c. It will, therefore, be seen that the court imposed a duty on defendant to exercise ordinary care to discover that the decedent was engaged in the forbidden employment or service and if it failed to do so, it would be liable. That feature of the instruction is vigorously attacked by defendant's counsel, but in view of our conclusions hereinafter expressed, it will be unnecessary to pass on that point.

It will be observed that three things are forbidden by the statute, *i. e.*, (a) employment of the infant by the master; (b) permitting the infant to engage in the forbidden service, and (c) suffering the infant to be so engaged. Of course, if there was an employment for and on behalf of the master by one who was authorized to do do so, the question of knowledge on the part of the master has no place in the case, since there could not be an actual employment without knowledge of that fact, and in such case the services are rendered by the infant under the actually known employment. The legislature had in mind, however, that there might be and no doubt frequently were cases where there was no actual employment by the master, but where he gave his permission to the infant to render the services in which he sustained his injuries, and it was thought wise to extend the inhibitions of such statute to such cases and, clearly if that was the legislative intent there could be no liability on the part of the one who received the services under such permission unless he had knowledge that they were being performed by the infant, since by the act of giving permission knowledge was imparted to him. But the legislature in its effort to protect the infant, under every reasonable and fair state of facts, furthermore provided that the one who received the services of the infant should be liable if he only *suffered* the infant to render the service in the performance of which he was injured and which

would arise where there had been neither *employment* nor *permission,* but where the one receiving the benefit of the services knew that the infant was performing them, though without employment or permission, and took no steps to stop the infant from such performance, in which case the one sought to be held liable would necessarily have knowledge of the infant's service. We feel sure that the statute means as much as we have said; but whether it goes further and requires the additional duty of exercising ordinary care to discover the fact that the infant was rendering services as the court held in this case, as we have seen, need not now be determined by us. The definition of the word "permission" by Mr. Webster is "To grant one express license or liberty to do an act; to authorize; to give leave; to allow." None of which acts can be done without a conscious knowledge of the facts and the exercise of mental volition, since one can not be said to allow, or give license, or leave to do a particular thing without the possession of knowledge of the facts with reference thereto.

The same author defines the word "suffer" as "to allow; to permit; to forbid or hinder; to tolerate," and the synonyms of the word given by him are "bear, endure, support, sustain, permit, tolerate, consent to," all of which acts on the part of the one guilty of the "suffering" implies knowledge on his part, since he could hardly consent to, tolerate or allow something to be done unless he had prior knowledge that it was being done. We, therefore, conclude that the etymological definition of the words "permit" and "suffer" imply and include knowledge on the part of the one so charged of the facts or things which he permits or suffers, and it remains to determine whether those definitions were intended to have a broader scope in the statute now under consideration, and others wherein they are employed.

In the case of Wigginton v. Sweeney, 174 Ky. 691, the question of the liability of the owner of stock running at large contrary to an ordinance or statute was involved, and this court in defining the elements of such violations quoted with approval this statement from the text of 2 Cyc. 444, "Suffering or permitting an animal to go at large implies knowledge, consent, or willingness on the part of the owner, or such negligent conduct as is equivalent thereto." Further on in the opinion it is said: "It is our judgment, that the words in the statute in question

'to permit any stock to run at large,' are properly con-
strued to mean, as defined by the trial court, to knowingly
allow stock to roam at large at will, or wander without
restraint or control or to fail to exercise in order to pre-
vent same, that degree of care that is usually exercised
by ordinarily prudent persons under the same circum-
stances.'' See also Bunnell v. Commonwealth, 30 K. L.
R. 491, and Ruh v. Commonwealth, 141 Ky. 585.

In the case of Allen v. Commonwealth, 178 Ky. 250,
defendant was convicted of the offense of suffering or
permitting gaming on his premises contrary to the pro-
visions of section 1967 of the statute. In the course of
the opinion we said: ''The word suffer, as used in this
indictment, and as used in the statute, is synonomous
with the word, permit, and both of them imply knowledge
of the thing suffered or permitted.'' In the case of
Hottsinger v. Commonwealth, 10 Ky. Opinions 330, the
construction of the same statute (or a similar one) was
before the court, and in holding defendant not guilty
under the evidence, because it did not appear that he had
knowledge of the acts for which he was indicted, the opin-
ion by Judge Cofer said: ''One can not be said to suffer
a thing to be done unless he knows that it is being done.
The word 'suffer' in the statute is used in the sense of
allowing by silent consent, or by not prohibiting; one can
not give silent consent that a thing be done unless the
purpose of another to do the thing be known.''

Subsection 16 of the Child Labor Act, now section
331a-16 of our statutes, prescribes a penalty for a parent
or guardian having custody of an infant who ''suffers
or permits such child to work, in violation of any of the
provisions of this act,'' and in the case of Ky. Utilities
Company v. McCarty, 170 Ky. 543, we held that an action
like this, the recovery in which would go to the parent,
could not be defeated under a defense of contributory
negligence by the parent in suffering or permitting his
child to engage in the prohibited labor in which it loses
its life, *unless* such parent *knew* that the infant was en-
gaged in the prohibited service and the words in the stat-
ute applying to the parent or guardian, and which are
the same as are applied to the employer or the one being
served, meant and should be construed as ''knowingly''
suffered or permitted the employment, and that, unless
such knowledge was possessed by the parent he could not
be said to have violated the statute or be guilty of con-

tributory negligence. We do not find any of the cases relied on by counsel for plaintiff announcing a contrary doctrine when their facts are thoroughly analyzed. They are foreign ones and, even if they did take a contrary view of the construction of the Child Labor Law, we would not be disposed to follow them in view of the opinions, *supra,* from this court. It is true that in all of the cited domestic cases, except the McCarty case, other statutes were involved, although the same words were construed; but in the McCarty case the same words, as applied to the parent or guardian, were construed to imply knowledge on the part of the person against whom the inhibitions of the statute were directed. We can see no reason to give such a construction to the parent or guardian and to withhold it and apply a much more drastic one to the person being served, since the inhibitions directed against the parent or guardian are as forcefully directed toward the accomplishment of the purpose of the statute as are the same inhibitions directed against the person being served.

Plaintiff's counsel, however, in opposition to the above expressed views, cites and relies on the cases of Sanitary Laundry Company v. Adams, 183 Ky. 39, and other similar ones from this court, as establishing a contrary doctrine. We, however, do not construe those cases as does counsel, since a different question was therein presented, which was one relating to the age of the employed infant, which we held in those cases the employer must be conclusively presumed to know. But that, we repeat, is an entirely different question from the one involved here. The master in those cases willingly and knowingly assumed the relationship of master toward the infant, and we held that in such case he must ascertain at his peril the fact whether the infant servant was of such age that he could be lawfully employed for that particular service; while here the question is, whether any such relationship was ever assumed by the master, or whether the *status* of the infant either as an employed servant, or as a renderer of service to the defendant with the latter's permission and sufferance, was ever created and which, to our minds, is quite a different question from the one involved in the Adams and other similar cases. We, therefore, conclude, without taking into contemplation the extremely drastic nature of the statute if construed as counsel for plaintiff contends, that in order to render the master liable, or the one receiving

the benefit of the services of the infant, such one must have actual, or perhaps, imputed knowledge of the fact that the infant is rendering the service.

But it is insisted that Casson had knowledge of such fact, and that it should be imputed to his employer, the appellee, but we do not find ourselves able to agree with that contention. The text in 26 Cyc. 539 says: "The servant generally has no implied authority to invite a third person, to whom the master owes no duty, to ride on a horse, wagon or car in charge of the servant." A number of cases are cited in note 37 to that text, all of which sustain it. In the case of Zampella v. Fitzhenry, from the Supreme Court of New Jersey and reported in 24 A. L. R. 666, it was expressly held that the defendant was not liable for an injury to an infant while riding on the defendant's truck at the invitation and with the permission of the driver who was defendant's servant, and in the annotations to that case, beginning on page 670, a great many cases from as many different jurisdictions are collated and which sustain the doctrine of that opinion. It is therein shown that the rule applies where the infant renders service the same as where it does not do so, upon the ground that such a servant has no implied authority from his master to contract for, or to permit or suffer, such service to be rendered by the infant. We will not insert the cases contained in that annotation in this opinion, since they may be readily found in the publication referred to. Besides, in order for the master to be liable for the acts of his servant even when done within the apparent scope of the latter's authority, it must be one in furtherance of the master's business, and for and on his behalf and not for and on behalf of the servant without any intention or purpose on his part to make it the act of the master. LaBatt on Master and Servant, volume 5, section 1901, and the English case of Robinson v. Hill (1910) 1 K. B. 94, in which that court construed the English Child Labor Act, and where a question similar to the one now before us was involved. Casson, the servant in this case, was not purporting to act for his master either in permitting the decedent to ride in his truck or in paying him the small contributions for the slight services he performed, for they were not made with funds of the master but with the funds of Casson individually. We, therefore, conclude that the evidence failed to establish liability under ground (1), *supra.*

As to the liability under ground (2), the court submitted that issue to the jury and it seems to have found it against plaintiff's contention, or if not then the jury necessarily found that either decedent or his parents were guilty of contributory negligence so as to defeat a recovery despite the negligence, if any, of Casson. So that, we need devote no more time to the discussion of this ground.

At this juncture, however, it is insisted that the court erred in submitting decedent's contributory negligence as a defense to the action as based on ground (1), *supra,* which was a violation of the provisions of our Child Labor Law, and the Adams case, *supra,* and other similar ones are cited in support of that contention and in which cases we held that contributory negligence on the part of the infant employee was not a defense to an action by or for him to recover damages for a personal injury sustained by him where the injury did not result in his death. But in the case of Smith's Admr. v. National Coal & Iron Company, 135 Ky. 671, which was an action to recover damages for the death of an infant employed contrary to the provisions of the same statute involved here, we held that the defense of contributory negligence on the part of the deceased infant was available to the defendant, since an action to recover for the negligent killing of another was not one given by the common law, but has its foundation in either constitutional or statutory provisions. With us it is provided for by section 241 of our Constitution and at the time that section was adopted, and since then, contributory negligence was and has been a defense to an action brought pursuant thereto. Section 6 of our statute does not create the action, but only carries out the directions of the Constitution as to the person who may bring the action and the disposition of the proceeds of any judgment recovered therein, and since the adoption of that section of the Constitution we have held in every case brought thereunder that contributory negligence on the part of deceased constitutes a defense. Passmaneck v. Louisville Railway Co., 98 Ky. 195; Clark v. L. & N. Railway Co., 101 Ky. 34, and Warren v. Jennessee, 122 S W. (not elsewhere reported) 862. The section of the Constitution was framed and adopted with at least the presumptive knowledge that such causes of action could be defended by a plea of contributory negligence on the part of decedent and, pre-

sumptively, with the intention that such a defense should thereafter prevail. It is, therefore, a mooted question if the legislature, even if it should expressly attempt to do so, could take away that right. But, whether so or not it was not attempted in this case and it can only be done by judicial construction which would involve the overruling of the Smith case and would not inure to the benefit of the deceased infant, but to the benefit of others, as may be provided by the statute. We do not construe the case of L. H. & St. L. Railway Company v. Lyons, 156 Ky. 396, as impinging on the doctrine of the Smith case. On the contrary, that opinion expressly recognized the Smith case as authority for the question therein determined. We, therefore, conclude that the court did not err in giving the contributory negligence instruction complained of, nor did it err in submitting the contributory negligence of the parents of deceased in defense of the cause of action stated in ground (1), as will be seen from McCarty case, *supra,* and the similar case reported in 169 Ky. 38.

The next and last contention is that there should have been no contributory negligence instruction as a defense to the cause of action relied on in ground (2), *supra.* But we think the same reasoning that justifies defense of the contributory negligence of the parents to the cause of action based alone on a violation of the statute applies with equal force to the cause of action stated in ground (2), since in either case they are the recipients and beneficiaries of any judgment they may be able to recover, and they should no more be permitted to reap the benefits of their negligence in the one case than in the other. Both causes of action are based upon negligence, but the facts necessary to establish it or tend to do so may be different in the two instances. The causes of action belong to the same genus and the negligence on the part of the beneficiaries of the judgment that would defeat the action in the one case should likewise do so in the other.

Some other collateral and immaterial points are argued in briefs, but we do not regard them as affecting the substantial rights of plaintiff, even if some of them should be regarded as technical errors, and we will not lengthen this already too long opinion by discussing them.

Wherefore, the judgment is affirmed.