## Wigginton Studio, Inc., v. Reuter's Adm'r.

(Decided May 1, 1934.)

HITE H. HUFFAKER and JOHN R. MOREMAN for appellant.
CLEM W. HUGGINS and J. W. STERNBERG for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellant, Wigginton Studio, is a corporation engaged in general photographic business in the city of Louisville, Ky. Nat Wigginton was president, (Miss) Dickie Adams, vice president, and J. Matt Kearney was secretary-treasurer. Inez Townes was an employee of the studio, doing various and general work for it. On and prior to July 3, 1931, the president and secretary-treasurer were absent from the state and had left Miss Adams, the vice president, in charge of the studio. Kearney owned an automobile which was his personal property and left it in the care of Miss Adams for her to use in the business of the studio and for her personal use or for any purpose she desired to use it.

Miss Townes' home was in Middlesboro, Ky., where her mother and stepfather lived. Miss Adams had previously made a trip to Middlesboro with Miss Townes and had become acquainted with Miss Townes' family and while there she learned that Miss Townes' stepfather had a small picture of his deceased father and was interested in having the picture enlarged.

Prior to July 4, which fell on Saturday in 1931, Miss Adams and Miss Townes decided to go to Middlesboro ostensibly for the purpose of securing the business of enlarging the picture for Miss Townes' stepfather, as

above stated, and to visit Miss Townes' family over the week-end.

Myrtle Reuter, the deceased, Miss Adams, Miss Townes, and Mildred Blandford were friends and associates and Miss Adams and Miss Townes invited Mrs. Reuter and Miss Blandford to go on the trip to Middlesboro with them and visit Miss Townes' mother and step-father. Miss Adams had Kearney's car that they could use to make the trip. Mrs. Reuter nor Miss Blandford had no connection with the studio nor with the business that Miss Adams claimed was taking her to Middlesboro. Mrs. Reuter had never been in the mountains of Kentucky and was interested in making the trip to see the scenery and that section of the country.

Shortly after noon on Friday, July 3, 1931, these four girls set forth on their trip to Middlesboro. At the request or suggestion of Miss Adams, Miss Townes was driving the car and Mrs. Reuter seated in the front seat with her, and Miss Adams and Miss Blandford were seated in the rumble-seat. It was raining on that day and at times very hard. The route from Louisville to Middlesboro took them over highway U. S. 60 to Lexington, Ky., and thence over U. S. 25 by the way of Richmond and Berea. They reached Berea in the late afternoon and stopped and had supper. They then proceeded to a point a short distance beyond Berea near Boones' Gap where the accident occurred. It was raining very hard at the time of the accident and the road along that place was winding. Their vision was somewhat obstructed by the rain and it was suggested by some of the occupants of the car, including Mrs. Reuter, the deceased, that they stop until the rain ceased and Miss Townes who was driving said she would stop when she got around the curve they were on or approaching. While going around the curve, they came to a break or rough place in the concrete. From the description of the place, it appears that the concrete had broken and the road repaired by filling in with gravel. As they approached this place, Miss Townes put on the brakes, and when the car reached the gravel, it skidded and turned over, and Mrs. Reuter sustained injuries resulting in her death a few hours thereafter.

The administrator of Mrs. Reuter's estate filed this suit against the Wigginton Studio, Inc., to recover of it for the death of Mrs. Reuter. A trial resulted in a ver-

dict and judgment in favor of plaintiff, administrator, for $6,000. Hence this appeal.

It is insisted by appellant that the deceased, Mrs. Reuter, was the invitee of Dickie Adams and Inez Townes and was not the guest of the Wigginton Studio, and the act of Misses Adams and Townes in inviting the deceased to go on the trip with them was beyond their scope of authority as agents or employees of the studio, for which the studio is not responsible. It is argued for appellee that this case does not come within the rule of cases where the employee or agent "steps aside" from his duties or scope of authority, and, appellee attempts to distinguish this case on the ground that Miss Adams was the vice president and at that time was solely in charge of the studio's business and that the automobile was being driven by an employee of the company on orders of its vice president, and further insists that Mrs. Reuter had gone along at the invitation of the vice president in order to in part pay her for services rendered to the company and therefore the whole venture was on the company's business.

With respect to the claim that Miss Adams took Mrs. Reuter on the trip to pay her for services rendered the company, the evidence on that point is as follows:

"Q. Miss Adams, did Mrs. Reuter, the dead girl, at any time do any special work for the Wigginton Studio—help out in odd jobs? A. Well, she did things—you know, nice little things—for me sometimes.

"Q. I mean, for the Studio? A. Oh, she did a good many letters for us. You see, she worked in an office in the same building, on the same floor, and she had a typewriter. She wrote lots of letters for me; and then quite often when Miss Townes and I would be out at one time she would stay in the reception room for me until I came back.

"Q. How did you, as vice president of this company, seek to compensate her for that? A. I didn't pay her anything.

"Q. Tell the jury whether or not you took her on this trip, and did other things like that for her, to compensate her? A. Yes, sir."
Cross-examination:

"Q. But Mrs. Reuter and Miss Blandford had nothing to do with the Studio and nothing to do with this business that you were going to Middlesboro for? A. Not a bit.

"Q. They went solely as your guests and as your personal friends? A. Yes, sir.

"Q. For the sole and only purpose of seeing the country? A. Yes.

"Q. And spending the Fourth of July with Miss Townes' father-in-law, Mr. Shelbourne? A. Her mother and step-father.

"Q. * * * How did you happen to take Mrs. Reuter to Middlesboro with you? A. She had never been down in that part of the country, and it is awfully pretty down there—of course you know that—and I just wanted her to see it.

"Q. Did she have any connection whatever with the Wigginton Studio. A. No.

"Q. Did she have any connection whatever with the business of the Wigginton Studio that was taking you to Middlesboro? No."

Inez Townes testified:

"Q. Well, Mrs. Reuter and Miss Blandford just went down as guests on this trip, did they not? A. Yes.

"Q. They had nothing to do with the business Miss Adams was going to transact? A. No, sir.

"Q. And where were they going to stay when they got to Middlesboro? A. At my home."

This evidence does not conduce to show that Miss Adams took Mrs. Reuter on the trip for the purpose of compensating her for work or any services she may have rendered to the studio corporation. She plainly states that Mrs. Reuter had no connection whatever with the studio, and that "she did nice little things for me [Miss Adams] sometimes." It is true that she stated that Mrs. Reuter wrote a good many letters for them and at times stayed in the waiting room when Miss Adams and Miss Townes were absent, but positively stated that she did not pay her anything for such

services and was not an employee of the studio, and that she took her on the trip and other things like that to compensate her for these personal favors to her. This evidence shows nothing more than an exchange of personal favors and kindness between the girls, with which the corporation had no connection. It is our conclusion that Mrs. Reuter was only an invitee of Miss Adams and Miss Townes and, therefore, the question for determination is whether or not Miss Adams' position as vice president of the studio corporation and being in charge of its business, had any more binding effect on the corporation with respect to an invitee, than if Miss Adams had only been a servant or other employee. The rule is well settled in this jurisdiction that a servant has no implied authority to invite or permit a third person to ride on a vehicle in his charge and if, in so doing, the invitee sustains injuries through negligence of the servant, the master will not be liable, as the servant is not acting within the scope of his authority.

In the case of Armstrong's Adm'r v. Sumne & Ratterman Co., 211 Ky. 750, 278 S. W. 111, Sumne & Ratterman Company, a corporation, was engaged in the wholesale milk business in Covington, Ky. One of their drivers invited an infant not 13 years of age to accompany him on the trips he made to gather milk in the vicinity. The infant had accompanied the driver on these trips for several months and it was shown that the driver occasionally paid the infant small sums of money for his services or assistance to him. The infant was killed accidentally and suit was brought against the milk company attempting to hold the corporation liable upon the theory that the infant was a guest of the corporation. Upon appeal to this court it was held that the corporation was not liable for the death of the infant while riding on the defendant's truck at the invitation and with the permission of the driver, who was defendant's servant. The infant was rendering services to the driver but not to the defendant. Then, measuring the facts in the case at bar to the rule enunciated in the case, supra, it may be said that even though Miss Adams was taking Mrs. Reuter on the trip for the purpose of compensating her for personal favors or services rendered to her about the studio, in such circumstances Mrs. Reuter was rendering services to Miss Adams personally, and could not be construed as being for the

purpose of accomplishing the work of the corporation. Williams' Adm'r v. Portsmouth By-Product Coke Co. et al., 213 Ky. 96, 280 S. W. 479; Bowler v. O'Connell, 162 Mass. 319, 38 N. E. 498, 27 L. R. A. 173, 44 Am. St. Rep. 350. Also to the same effect see Ashland Coca Cola Bottling Co. et al. v. Ellison et al., 252 Ky. 172, 66 S. W. (2d) 52; American Savings Life Ins. Co. et al. v. Riplinger, 249 Ky. 8, 60 S. W. (2d) 115; Broadway Motors, Inc., v. Bass, 252 Ky. 628, 67 S. W. (2d) 955.

But it is argued for appellee that Miss Adams was not a mere servant or employee of the corporation and that by virtue of her authority as vice president and being in charge of the corporation's business, her acts were binding on the corporation and, therefore, Mrs. Reuter, the deceased, was an invitee of the corporation. To this contention we cannot agree. An officer of a corporation, when rendering services for the corporation, is an employee or servant of the corporation and the fact that he is an officer or a stockholder gives him no more authority to bind the corporation than any other employee has to render his principal liable for his acts.

In 7 R. C. L. p. 450, sec. 436, it is said:

"Still the President of a corporation when acting for the corporation is merely its agent and can not act so as to bind the corporation beyond the scope of his authority, and the fact that he owns a majority of the corporate stock does not in itself vest him with any additional authority."

The above rule of law was adhered to by this court in the case of Louisville Lozier Co. v. Sallee, 167 Ky. 499, 180 S. W. 841, wherein we held that in order for a company to be held responsible for the tort of one of its officers he must be acting within the scope of his employment and in the furtherance of the corporation's business. It is our conclusion that Miss Adams acted beyond the scope of her authority as an employee of the corporation and that the corporation is not responsible for her acts and the trial court erred in not sustaining appellant's motion for a directed verdict in its favor.

The judgment is reversed and remanded for proceedings consistent with this opinion.

Whole court sitting except Judge Thomas.