**MID–STATES PLASTICS, INC., Appellant,**

v.

**ESTATE OF William Clinton BRYANT, by and through his Executrix, Tina S. BRYANT, et al., Appellees.**

No. 2006–SC–000425–DG.

Supreme Court of Kentucky.

Feb. 21, 2008.

---

**20.** Rules of the Supreme Court (SCR) 3.130(1.3).

Anne Adams Chesnut, David Andrew Owen, Greenebaum, Doll & McDonald, PLLC, Lexington, KY, Counsel for Appellant.

Thomas K. Herren, Herren & Adams, Lexington, KY, Curtis J. Dickinson, Woodstock, GA, Counsel for Appellees.

Opinion of the Court by Justice SCHRODER.

The question in this appeal is whether an employer is liable for an employee's tortious injuries to a guest who accompanied the employee on a business trip. We opine that in order to hold the employer liable for the employee's tortious injuries to the employee's guest on a business trip, the employee must have acted within the scope of his authority in inviting the guest and for the purpose of accomplishing the work of the employer. Because the guest in this case had a strictly non-business purpose in accepting the employee's invitation, we reverse the Court of Appeals and reinstate the trial court's dismissal.

Mid–States Plastics, Inc. is a Kentucky corporation with its headquarters in Mt. Sterling, Kentucky. Daniel Edwards was the President, General Manager, and Chief Executive for Mid–States (at one time he owned the company). Edwards' duties involved a significant amount of travel. When traveling for Mid–States, Edwards determined the method and manner of travel and was reimbursed for his travel expenses. Specifically, when he drove his car, he collected mileage, and when he flew commercially, he obtained reimbursement of the plane ticket. Additionally, the company reimbursed Edwards for his mileage when he flew his own private plane, which he often used in his travels.

On this last occasion, Edwards had a business trip to Indianapolis, and invited his pastor, Reverend William Clinton Bryant, along to visit the Reverend's family while Edwards worked. The trip for the Reverend was free and involved no business purpose on his part for Mid–States. On this trip, Edwards personally leased a plane rather than flying his own. Unfortunately, the plane struck a cell phone tower and crashed on the return trip, killing both Edwards and Reverend Bryant.

The Reverend's estate and family filed suit against Mid–States and Edwards' estate. The claim against Mid–States was premised on vicarious liability for the employee's negligent piloting of the plane. The trial court granted Mid–States' summary judgment, dismissing the case against it without any detail, reasoning, or analysis. The Court of Appeals reversed and remanded the case to the trial court for further findings. The Court of Appeals determined that the sole issue before it was whether there were any genuine issues of material fact concerning Mid–States' vicarious liability to the decedent's estate for the pilot's negligence under the doctrine of *respondeat superior*. The Court of Appeals stated that in determining whether Mid–States could be held vicariously liable for the pilot's negligence, a factual finding had to be made as to (1) whether Mid–States had actual knowledge of the employee's practice of allowing a non-business passenger to accompany him

on business trips, and (2) if so, did Mid–States fail to object.

The facts in *Wigginton Studio v. Reuter's Adm'r*, 254 Ky. 128, 71 S.W.2d 14 (1934) are similar to our case. In *Wigginton*, the vice president (Adams) of the corporation and another employee used a private vehicle to drive from Louisville to Middlesboro, Kentucky, ostensibly for business purposes. Myrtle Reuter was one of the two guests invited to accompany Adams and the other employee on the trip. Reuter was going to see the scenery, while the other guest was going to see family. Neither guest's presence was for the purpose of accomplishing the work of the corporation. During the trip, in a hard rain, the vehicle hit some gravel, skidded, and turned over. Reuter was seriously injured and died a few hours later. Her estate sued Wigginton Studio, Inc., and recovered a judgment. On appeal, our predecessor, the Court of Appeals, reversed opining that:

> The rule is well settled in this jurisdiction that a servant has no implied authority to invite or permit a third person to ride on a vehicle in his charge and if, in so doing, the invitee sustains injuries through negligence of the servant, the master will not be liable, as the servant is not acting within the scope of his authority.

*Id.* at 16. The *Wigginton* Court recognized that not only does the employee have to be acting within the scope of his/her authority in inviting the guest, but *also*, the guest's presence must "be construed as being for the purpose of accomplishing the work of the corporation." *Id.*

The Court in *Wigginton* cited the case of *Armstrong's Adm'r v. Sumne & Ratterman Co.*, 211 Ky. 750, 278 S.W. 111 (1925) and a number of other cases for its authority. *Armstrong's Adm'r* involved a milkman[1] who invited a thirteen-year-old neighbor to ride along in the company truck. The milkman would sometimes even pay the young neighbor for helping him. The young neighbor was accidentally injured and died. In denying recovery, our predecessor Court, the Court of Appeals, held that:

> [I]n order for the master to be liable for the acts of his servant even when done within the apparent scope of the latter's authority, it must be one in furtherance of the master's business, and for and on his behalf and not for and on behalf of the servant without any intention or purpose on his part to make it the act of the master.

*Id.* at 115. The Court went on to determine that the milkman was not purporting to act for the employer in either permitting the neighbor to ride in the truck or in paying the neighbor a small contribution for the work he did for the milkman. *id.*

■ In our case, it is clear that Reverend Bryant was a guest of Edwards and his presence "could not be construed as being for the purpose of accomplishing the work of the corporation," as required by *Wigginton* before liability attaches to the master. 71 S.W.2d at 16. Also, the fact that Edwards was an officer of Mid–States (President, as well as the General Manager and Chief Executive) and not just an employee does not change the outcome. *Wigginton* made clear that "in order for a company to be held responsible for the tort of one of its officers he must be acting within the scope of his employment and in the furtherance of the corporation's business." *Id.*

---

1. In the bygone days, a dairy bought trucks and hired men to deliver milk to the door-steps of customers early in the morning. The drivers were known as "milkmen."

■ The Court of Appeals cites to the case of *Estell v. Barrickman*, 571 S.W.2d 650 (Ky.App.1978) for authority that when the employer is aware that the employee invites guests and does nothing to enforce a "no rider" rule, the guests become the invitees of the employer and exposes the employer to liability for the employee's negligence that may injure the guests. The Court of Appeals' decision in *Estell* acknowledged that there were no Kentucky cases for this proposition, but that a number of other states have adopted this position. *Id.* at 652. The problem, however, with the *Estell* approach is that it ignores the second requirement of *Wigginton*, that the guest's presence on the trip somehow must be for the purpose of accomplishing the work of the employer. We believe the omission of the second element of the tort was not meant to eliminate the requirement that the guest's presence must also serve the work of the employer. To the extent that *Estell* does not require this second element, it is overruled. Even if the employer fails to adopt a "no rider" rule, and the employee's invitation is within the scope of his/her employment, liability for tortious injures does not attach unless the invitation to the guest also served the purpose of accomplishing the work of the employer. Since the invitation to Reverend Bryant in no way served the employer, Mid–States, the trial court was correct in granting summary judgment and dismissing the claim.

For the foregoing reasons, we reverse the Court of Appeals and reinstate the trial court's entry of summary judgment dismissing the claims of the estate and family against Mid–States Plastics, Inc.

All sitting, except CUNNINGHAM, J.

ABRAMSON, MINTON, NOBLE, and SCOTT, JJ., concur.

LAMBERT, C.J., dissents by separate opinion.

Dissenting Opinion by Chief Justice LAMBERT.

I dissent upon the belief that the majority has failed to apply accepted principles of Kentucky law relating to respondeat superior or vicarious liability. The generally accepted rule is as follows:

> In general it is sufficient to make the master responsible that he gave to the servant an authority, or made it his duty to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment.[1]

Under this test, Appellees established vicarious liability from the facts that the employee Edwards was acting within the scope of his authority and for a business purpose when the tortious act occurred. Contrary to the majority view, it was not necessary to establish that the third party, Reverend Bryant, was present for the benefit of the company. This is in keeping with the purpose of vicarious liability which is to allow recovery for the tortious acts of a master's employees. "Charging one with the negligent acts of another, under the doctrine of respondeat superior, is an arbitrary rule based on public policy; and its justification is that the employer should be vigilant in supervising those in his employ to protect the public generally."[2]

The case relied on by the majority, *Wigginton Studio v. Reuter's Adm'r*,[3] is distin-

1. *Ben Humpich Sand Co. v. Moore*, 253 Ky. 667, 69 S.W.2d 996, 997 (1934).

2. *Shedd Brown Mfg. Co. v. Tichenor*, 257 S.W.2d 894 (Ky.1953).

3. 254 Ky. 128, 71 S.W.2d 14 (1934).

guishable both on its facts and in its disharmony with the body of Kentucky case law on respondeat superior liability. Factually, *Wigginton* turned on the distinction that the employee who offered the ride to the third party was shown not to have authority to do so. The Court in *Wigginton Studio* cited the general rule that the company's liability for the tort of one of its officers required that the officer be acting within the scope of employment and in furtherance of the employers' business, but said that the employee and corporate officer Adams was not acting within the scope of her authority by asking a passenger to join her on a trip.[4]

In this case, Edwards, the president of the corporation, was broadly permitted to secure his own transportation, and whatever he did was implicitly approved and paid for by the corporation. There was evidence that Edwards had been known by the corporation to have taken his wife on trips with him. Edwards was thus never discouraged by the corporation from taking non-company passengers with him. Thus, unlike *Wigginton Studio*, Edwards had, at least, implied authority to invite a rider to accompany him on the trip and to subject the company to liability when Edwards' tortious act caused harm. Edwards was clearly acting within the scope of his employment. He was acting in furtherance of his employer's business at the time of the fatal accident.

To make the necessary showing to establish vicarious liability, the proof must show that the act is one that the agent was employed to perform, or that it accrued substantially within the authorized time and space limits of the employment or that the employee was actuated at least in part by a purpose to serve the master.[5] Here the trip was actuated by a purpose to serve the employer. The question is whether the trip furthered the business of Mid–States, not whether Reverend Bryant's presence benefited Mid–States.[6] It was not necessary to show that the invitation to Reverend Bryant furthered the business to hold Mid–States Plastic vicariously liable.

*Wigginton Studio* is singular in this jurisdiction in requiring that the rider's presence be for benefit of the corporation in order to bind the employer to vicarious liability. From a public policy standpoint, it does not make sense to allow an employer to escape liability when it knew or should have known or expressly or impliedly authorized its employee to take private guests on its business trips. Thus, I break with the majority's decision to overrule *Estell v. Barrickman.*[7] Instead, I would affirm that case as an unremarkable but proper application of the law of Kentucky regarding vicarious liability for invitees of a company. As such, I would affirm the Court of Appeals' reversal of the trial court's summary judgment.

---

**4.** *Id.* at 16.

**5.** *Home Ins. Co. v. Cohen,* 357 S.W.2d 674 (Ky.1962).

**6.** *See e.g. Weldon v. Federal Chemical Co.,* 378 S.W.2d 633, 634 (Ky.1964).

**7.** 571 S.W.2d 650 (Ky.App.1978).