RENDERED:  AUGUST 20, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0858-MR


HEATHER PARSLEY, AS GUARDIAN/
CONSERVATOR FOR COLETON PARSLEY,
A MINOR; AND HEATHER PARSLEY AND
BRIAN PARSLEY, INDIVIDUALLY                                      APPELLANTS


                    APPEAL FROM WARREN CIRCUIT COURT
v.                  HONORABLE STEVE A. WILSON, JUDGE
                         ACTION NO. 19-CI-00047


CINCINNATI INSURANCE COMPANY;
SAYLORS GOLF CARTS, INC.;
EDGEHILL FARM, INC.; AND
JOHN F. BALLANCE                                                   APPELLEES


                              OPINION
                             AFFIRMING

                          ** ** ** ** **

BEFORE:  GOODWINE, KRAMER, AND MAZE, JUDGES.

MAZE, JUDGE:  Appellants (collectively referred to as "Parsley") appeal the

entry of separate summary judgments dismissing appellees Saylors Golf Carts,

Inc., and Cincinnati Insurance Company from litigation stemming from serious injuries sustained by Coleton Parsley while riding on an innertube pulled by a 4-wheeler all-terrain vehicle (ATV) driven by appellee John Ballance. Parsley argues that genuine issues of material fact preclude summary disposition concerning the liability of Saylors for Ballance's actions and as to coverage for Ballance under a Cincinnati Insurance Company policy insuring Saylors. We affirm.

After a snowfall on January 13, 2018, John Ballance and his wife Katie hosted an impromptu sledding party for their family and friends at their farm in Oakland, Kentucky. Although the Parsleys allege that the Ballances had invited guests to the property, John Ballance stated in deposition testimony that people other than family had not been invited but simply started showing up. One of those who showed up was appellant Coleton Parsley, a friend of the Ballances' son. At some point in the evening, Mr. Ballance was using a four-wheeler to tow his son and Coleton on an innertube. While Coleton was being towed, the innertube on which he was riding struck a utility pole causing catastrophic injuries from which Coleton is unlikely to fully recover.

Edgehill Farm, where the accident occurred, is located approximately five miles from Saylors Golf Carts, Inc., a golf cart sales, rental, and service business owned by the Ballances. The Ballances reside on and individually own a

portion of Edgehill Farm. Edgehill Farm also owns the property on which Saylors Golf Carts is located in Smiths Grove, Kentucky, although the businesses are separate business entities.

The ATV Mr. Ballance was operating at the time of the accident is the primary focus of this appeal. Approximately four years prior to the accident, a Saylors' customer, Jim Stirgill, traded the subject ATV and another ATV for a golf cart. In deposition testimony, Mr. Ballance stated that within days of that transaction, he took the ATVs to the Edgehill Farm property where he and his family used them for recreation and as their personal farm implements. He also stated that the ATVs Stirgill traded in were kept in a barn where he sometimes stored excess golf cart inventory from shortly after the trade-in in December 2013 until the accident in 2018.

Mr. Ballance acknowledged that because Saylors so rarely takes ATVs in trade for golf carts, he was unaware that, unlike golf cars, ATVs are accompanied by certificates of title. Accordingly, Saylors did not require Mr. Stirgill to produce an endorsed certificate of title to complete the trade-in transaction. Nor did Saylors submit an application for a new title and registration to the county clerk. Thus, the ATV in question remained in Stirgill's name until after the accident when the Ballances discovered that title had never been transferred. They thereafter contacted Mr. Stirgill who signed the ATV over to

-3-

Mr. Ballance individually. On March 21, 2018, approximately two months after the accident, a new title was issued to Mr. Ballance individually.

In January 2019, Parsley filed a complaint in Warren Circuit Court naming John Ballance, Edgehill Farm, and Saylors as defendants. The complaint also named Cincinnati Insurance Company as a defendant, seeking recovery on a commercial general liability policy it had issued to Saylors. Following exchange of written discovery and Mr. Ballance's deposition, Saylors and Cincinnati Insurance separately moved for summary judgment. The circuit court granted each motion holding that there were no genuine issues of material fact, concluding that both Saylors and Cincinnati Insurance were entitled to judgment as a matter of law, and dismissing Parley's claims against each entity.

With respect to Saylors, the circuit court specifically held that Mr. Ballance was not furthering any business or other interest of Saylors by pulling his son and Coleton on the innertube in the snow. The court also concluded that ownership of the ATV was irrelevant because there was no evidence that Saylors negligently allowed Mr. Ballance to operate the ATV. In granting Cincinnati Insurance's motion, the circuit court determined that Mr. Ballance was not acting as an officer or employee of Saylors at the time of the accident and that his act of pulling his son and Coleton on an innertube was in no way connected to Saylors' business. Although Edgehill Farm is also an insured under Saylors' commercial

policy, the trial court determined that coverage was limited to damages arising out of the ownership, maintenance, or use of property designated by the policy. Because the location designated by the policy is not the location where the accident occurred, the circuit court concluded coverage did not extend to Edgehill. After the circuit court subsequently certified each judgment as final and appealable, this appeal followed.

In appeals from the grant of summary judgment, this Court must conduct a *de novo* review to determine "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). Further, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Finally, as our Supreme Court emphasized in *Isaacs v. Smith*, 5 S.W.3d 500, 503 (Ky. 1999), "[a]n issue of nonmaterial fact will not preclude the granting of a summary judgment. A motion for summary judgment should be granted if the court is fully satisfied that there is an absence of genuine and material factual issues. *Steelvest* does not hold to the contrary, but expressly reaffirms that longstanding position." With these principles in mind, we turn to the arguments for reversal.

### 1. *Dismissal of Parsley's Claims against Saylors*

Parsley first argues that genuine issues of material fact as to the ownership of the ATV and as to Saylors' vicarious liability for Mr. Ballance's use of the ATV at the time of the accident preclude summary disposition. As previously noted, in dismissing the claims against Saylors, the circuit court specifically determined that ownership of the ATV was irrelevant. Rather, the circuit court held that the dispositive issues centered upon whether Mr. Ballance's use of the ATV fell within the course and scope of his employment with Saylors and whether Saylors negligently entrusted the ATV to Mr. Ballance on the night in question. We reiterate the well-established rule set out in *Steelvest* that "[t]he trial judge must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." 807 S.W.2d at 480. And, in so doing, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Id*.

Thus, viewing this record in the light most favorable to Parsley, we will presume that the ATV in question was listed as an inventory asset of Saylors at the time the accident occurred. Nevertheless, we are in complete agreement with the decision of the circuit court that Saylors' liability turns upon whether it is vicariously liable for Mr. Ballance's use of the ATV and whether it negligently

entrusted the ATV to him on the night in question, not whether Saylors in fact owned the ATV.

As set out in the order granting summary judgment, the record is devoid of any evidence suggesting that Mr. Ballance was using the ATV to further Saylors' business interests when the accident occurred. In *Papa John's International, Inc. v. McCoy*, our Supreme Court reexamined and reiterated the rule set out in the American Law Institute's RESTATEMENT (THIRD) OF AGENCY § 7.07 (2006), entitled "Employee Acting Within Scope of Employment:"

> This general rule is consistent with the standard advanced by Prosser and Keeton—as noted in the *Patterson* [*v. Blair*, 172 S.W.3d 361, 364 (Ky. 2005)] opinion—in their treatise on tort law: "[I]n general, . . . the master is held liable for any intentional tort committed by the servant where its purpose, however misguided, is wholly or in part to further the master's business." Thus, if the servant "acts from purely personal motives . . . which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable." This approach "conforms to the economic theory of vicarious liability . . . because when the employee acts for solely personal reasons, the employer's ability to prevent the tort is limited."

244 S.W.3d 44, 52 (Ky. 2008) (footnotes omitted). Because review of the record confirms the circuit court's finding that there is absolutely no evidence in the record that Mr. Ballance was acting in the course and scope of his employment, summary judgment in favor of Saylors is appropriate. The accident occurred at the

-7-

Ballance's residence during an impromptu event occasioned by a larger snowfall than is normal for the area. Parsley failed to offer any evidence to rebut Mr. Ballance's deposition testimony that the impromptu sledding party was a purely personal recreational activity at which the golf cart business "didn't even come to mind."

In addition, we are convinced that this case falls squarely within the rationale set out in *Mid-States Plastics, Inc. v. Estate of Bryant ex rel. Bryant* concerning the requirement that for vicarious liability to attach, there must be evidence that the activity in question can be construed as furthering the work of the employer. 245 S.W.3d 728 (Ky. 2008). In *Bryant*, Daniel Edwards, the president of Mid-States Plastics, had a planned business trip to Indianapolis and invited his pastor to ride along in a leased plane to allow the minister to visit his family while Edwards worked. The trip was free for the minister and involved no business purpose on his part for Mid-States. On the return trip, the plane struck a cell phone tower and crashed, killing both Edwards and Reverend Bryant. In affirming the entry of summary judgment in favor of Mid-States, the Kentucky Supreme Court reasoned:

> In our case, it is clear that Reverend Bryant was a guest of Edwards and his presence "could not be construed as being for the purpose of accomplishing the work of the corporation," as required by *Wigginton* [*Studio v. Reuter's Adm'r*, 254 Ky. 128, 71 S.W.2d 14 (1934)] before liability attaches to the master. 71 S.W.2d

at 16. Also, the fact that Edwards was an officer of Mid-States (President, as well as the General Manager and Chief Executive) and not just an employee does not change the outcome. *Wigginton* made clear that "**in order for a company to be held responsible for the tort of one of its officers he must be acting within the scope of his employment and in the furtherance of the corporation's business**." *Id.*

*Id.* at 730 (emphasis added). The connection between Saylors and the impromptu sledding party at the Ballances' residence is even more attenuated than the relation between Mid-States and Edward's invitation to Reverend Bryant to accompany him on a scheduled Mid-States' business trip. In sum, an impromptu sledding party at an employee's residence cannot be construed as serving the interests of Saylors without the production of some evidence to the contrary.

Furthermore, Parsley did not plead nor attempt to offer proof as to negligent entrustment. Although Parsley now argues that the Saylors took the position below that the ATV is a motor vehicle, that is a distortion of Saylors' position as it simply noted that the titling requirements of ATVs differ from those regarding golf carts. In any event, our Supreme Court in *Manies v. Croan* settled the question of whether an ATV can be considered to be a motor vehicle for purposes of the limitations provision of the Kentucky Motor Vehicle Reparations Act:

ATVs, like the golf carts considered *in Kenton County Public Parks Corporation v. Modlin*, Ky.App., 901 S.W.2d 876 (1995), are not to be used on the public

-9-

roadways. With respect to ATVs, our General Assembly expressly prohibited such use in KRS 189.515(1):

> No person shall operate an all-terrain vehicle upon any public highway or roadway or upon the right-of-way of any public highway or roadway.

> It seems clear that a vehicle which by law is prohibited from operation on public highways could not also satisfy the language of KRS 304.39–020(7), i.e., "any vehicle which transports persons or property upon the public highways of the Commonwealth." Moreover, there is no credible basis for concluding that the registration and insurance requirements of the MVRA were intended to apply to ATVs. The exclusion of ATVs from the MVRA's reparations system similarly excludes causes of action arising from their use from the MVRA's more generous limitations period. The trial court correctly applied the one-year limitations period in KRS 413.140.

977 S.W.2d 22, 23-24 (Ky. App. 1998). Nothing in Parsley's argument persuades us that ATVs should be treated as motor vehicles for negligent entrustment analysis.

Thus, in our view, ATVs are to be construed to be chattel and fall within the purview of Section 390 of the RESTATEMENT OF TORTS 2D. The application of that section was explained by this Court in *Hercules Powder Company v. Hicks*:

> It is important to recall that the rule [Section 390 of RESTATEMENT OF TORTS 2D] imposes liability upon the supplier of a chattel for use by an incompetent person if, and only if, the supplier knows or has reason to know of

-10-

the probable misuse by reason of the incompetence of the person to whom the chattel is furnished. The record fails to reflect any basis upon which a finding could be made that Hercules knew or had reason to know of any incompetence of Herbert or Wabassco or any of its employees. Section 12 of Restatement of Torts 2d points out that the words 'reason to know' as used in the Restatement of Torts denote the fact that the actor has information from which a person of reasonable intelligence would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists. Significantly, Section 12 provides that the words 'should know' denote the fact that a person of reasonable prudence and intelligence would ascertain the fact in question in the performance of his duty to another, or would govern his conduct upon the assumption that such fact exists.

453 S.W.2d 583, 587 (Ky. 1970). Nothing in the facts alleged in Parsley's complaint would support a claim of negligent entrustment and the circuit court did not err in so holding.

Accordingly, we hold that the Warren Circuit Court did not err in granting summary judgment dismissing Parsley's claim against Saylors.

2. *Dismissal of Parsley's claim against Cincinnati Insurance*

The single issue concerning the dismissal of Parsley's claims against Cincinnati Insurance Company is whether the circuit court properly concluded that the policy covering Saylors provides no coverage for Mr. Ballance for the claims asserted against him in the complaint. Initially, Parsley asserts that coverage is available to Mr. Ballance simply because he was driving an ATV belonging to

Saylors at the time of the accident and, because Saylors disputes ownership of the ATV, genuine issues of material fact preclude the entry of summary judgment. Again, because the record is to be construed most favorably to the party opposing summary judgment, for purposes of the arguments concerning Cincinnati Insurance, we will presume ownership on the part of Saylors. Nevertheless, ownership of the ATV is, in and of itself, insufficient to impose liability under the policy issued to Saylors.

The policy in question contains a "golfmobile" endorsement which provides:

> WHO IS AN INSURED (Section II) is amended to include as an insured any person(s) using or legally responsible for the use of golfmobiles loaned or rented to others by you or any of your concessionaires but only for their liability arising out of the use of the golfmobiles.

The circuit court specifically rejected Parsley's contention that "golfmobiles" can be reasonably interpreted to mean either golf carts or Saylors' inventory generally, holding that the term "golfmobile":

> can only be reasonably interpreted to mean golf carts or other types of mobiles used on a golf course because "golf" is an integral part of the term. Regardless of whether the ATV was owned by Saylors at the time of the incident, users of ATVs were not covered under the additional endorsement covering golfmobiles.

We agree.

To suggest that the term "golfmobiles" encompasses Saylors' inventory in general fails to accord any significance to the use of that particular term in the endorsement. As Cincinnati Insurance correctly posits, to equate the term "golfmobile" to general inventory leads to absurd results as general inventory might include golf cart parts and office furniture as well. In *Stone v. Kentucky Farm Bureau Insurance Company*, this Court reiterated that, as a general rule, interpretation of an insurance contract is a matter of law for the court. 34 S.W.3d 809, 810-11 (Ky. App. 2000) (citing *Morganfield National Bank v. Damien Elder & Sons*, 836 S.W.2d 893 (Ky. 1992)). The *Stone* Court also noted that while ambiguous terms are to be construed against the drafter and in favor of the insured, the policy must be accorded a reasonable interpretation, "and there is no requirement that every doubt be resolved against the insurer." *Id*. at 811 (citing *Motorists Mutual Ins. Co. v. RSJ, Inc*., 926 S.W.2d 679 (Ky. App. 1996)). And finally, *Stone* holds that policy terms "should be interpreted in light of the usage and understanding of the average person." *Id.* (citing *Fryman v. Pilot Life Insurance Company*, 704 S.W.2d 205 (Ky. 1986)). We thus concur in the circuit court's assessment that the term "golfmobile" cannot be reasonably construed as encompassing inventory in general – to hold otherwise would undermine the very purpose for using a specialized term like "golfmobile" in the policy endorsement.

Parsley also argues that coverage for Mr. Ballance is provided by an additional insured endorsement for owners, lessees, or contractors. The circuit court concluded that coverage under that endorsement extends only to damages caused in whole or in part by:

1. Your [Saylors'] acts or omissions;

2. The acts or omissions of those acting on your [Saylors'] behalf;

in the performance of your [Saylors'] ongoing operations for the additional insured(s) at the location(s) designated above.

In other words, the circuit court interpreted the word "your" as referring to Saylors. This construction comports with the policy's declaration that if the named insured is an organization other than a partnership, joint venture or limited liability company, the named insured's "executive officers" and directors are insureds "but only with respect to their duties as your officers or directors." Similarly, the commercial general liability policy provides that employees of the named insured are insureds only with regard to acts within the scope of their employment or while performing duties related to Saylors Golf Carts' business interests.

Parsley attempts to conflate Mr. Ballance's status as an "additional insured" with Saylors' status as the only named insured on the policy. As Cincinnati correctly argues, there is a fundamental difference between a named insured and someone who qualifies as an additional insured for the provision of

-14-

coverage under the specific circumstances set out in the endorsement. Because Mr. Ballance was not acting as an executive officer or employee of Saylors at the time of the accident, nor was any business interest of Saylors being furthered by the impromptu sledding party at the Ballances' residence, the circuit court correctly determined that Saylors' commercial policy does not provide coverage for his act of using the ATV for a purely personal and recreational activity. Simply stated, Mr. Ballance's actions fall outside the scope of that policy's explicitly defined coverage.

Accordingly, we affirm the judgment of the Warren Circuit Court dismissing Parsley's claims against Saylor's Golf Carts and Cincinnati Insurance Company.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE SAYLORS GOLF CARTS, INC.: |
|---|---|
| Matt McGill<br>Bowling Green, Kentucky | Thomas N. Kerrick<br>Colton W. Givens<br>Bowling Green, Kentucky |
| Kyle R. Salyer<br>Paintsville, Kentucky | BRIEF FOR APPELLEE<br>CINCINNATI INSURANCE<br>COMPANY:<br><br>Michael D. Risley<br>Louisville, Kentucky |