## Inter-Southern Life Ins. Co. v. Stephenson.

(Decided Jan. 10, 1933.)

EATON & BOYD, and WOODWARD, HAMILTON & HOBSON and L. H. HILTON for appellant.

C. A. WICKLIFFE and W. MIKE OLIVER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On July 21, 1928, O. D. Estes solicited and secured from Ernest Smith an application to the Inter-Southern Life Insurance Company for an insurance policy for $2,000 on his life. The policy applied for was issued and at the request of insured was delivered to his sister, Mrs. Frankie Stephenson, the designated beneficiary, who signed or caused a receipt to be signed therefor in the name of insured. On September 9, Ernest Smith was found dead some distance from the home of his father and near the body was a fruit jar containing a small quantity of moonshine liquor.

On October 25 following the death of insured, Mrs. Stephenson, as the beneficiary, instituted this action in equity in the McCracken circuit court, and in addition to the foregoing facts alleged in her petition that at the time of the death of insured, the policy was in full force and effect; that in due time she caused notice of his death to be given to the company, which sent one of its agents to make settlement with her. She further alleged, in substance, that the agent and representative of the company admitted liability to the extent of the premium paid on the policy, but denied any further liability and represented to her that her brother had procured the policy by making false and fraudulent state-

ments which rendered the policy contract void and of no effect; that the policy had not been delivered to the insured or personally accepted by him during his lifetime, and further that the policy was void because insured destroyed his own life before the policy had been in force for one year; that unless she surrendered the policy and accepted the premium which had been paid thereon, he would institute suit against her and she would have to employ a lawyer and incur costs for more than she would be able to recover; that being illiterate and ignorant of her rights under the contract, she relied solely on the statements made by the company through its agent and representative and accepted the sum offered and surrendered the policy. She further alleged that all the statements, made to her by the company's agent to induce her to surrender the policy were false and untrue and but for which she would not have accepted the amount paid or surrendered the policy; that the company had wrongfully procured possession of the policy, but that she was entitled to its possession and asked that it be required to file same in the action. She tendered to the company the amount which she received on surrender of the policy and asked that the settlement which it had secured from her be set aside and that she be adjudged the full amount of the policy with interest from the 12th day of October, 1928, subject to credit by the amount paid to her by the company.

The answer of the company consisted of six paragraphs, the first of which is a general denial of the allegations of the petition and the other five set up certain affirmative defenses which it is unnecessary to now enumerate, since in so far as pertinent, they will be referred to in the discussion of the grounds relied on for reversal.

Evidence was heard on the issues as completed by subsequent pleadings, and judgment was rendered setting aside the settlement by which Mrs. Stephenson was paid the sum of $95.90 in consideration of her surrender of the policy and adjudging that she recover of the company the sum of $2,000 subject to a credit of $95.90 as of date October 19, 1929, with interest from November 10, 1929, and this appeal followed.

In bar of appellee's right of recovery, appellant pleaded as a full settlement of the matter in controversy that it had paid to appellee the sum of $95.90 in

consideration of her surrender of the policy and that the court erred in setting aside that settlement as invalid.

The facts as disclosed by the evidence, in substance, are that appellant maintained a district office at Paducah, Ky., in charge of its agent, L. B. Massie. O. D. Estes was one of its soliciting agents working out of that office, and previous to the time the application for the policy in question was made, had talked to Ernest Smith on the subject of insurance and had solicited him to make application. Ernest Smith was about 25 years old and lived with his father, Richard Walter Smith, in a rural district some miles from Paducah. On July 21, 1928, O. D. Estes requested L. A. Stephenson to direct him to the home of Ernest Smith. Stephenson told him he would have difficulty in finding the way and at the solicitation of Estes accompanied him to the Smith home. While there the agent procured Richard Walter Smith and his two sons, Ernest Smith and James William Smith, to make application to appellant for life insurance. He procured the name of Ernest Smith to be signed to a blank application; however, the name was signed by Minnie Lee Smith, mother of applicant, at his request. The applicant paid $20 on the premium and Stephenson, either then or later, gave his check to the agent for the remainder. Estes testified that he asked applicant all the questions in the application and reduced the answers to writing on a separate sheet of paper. Mrs. Frankie Stephenson, sister of Smith, was designated as beneficiary. After the applications were taken, the agent, accompanied by Stephenson, went to the office of the company in Paducah, where, according to the evidence of Estes, the answers made by Ernest Smith were read to and inserted in the application by Massie. In addition to the amount paid by Ernest Smith at the time his application was taken, Stephenson gave his check and a note to cover the balance of the premiums on all the policies applied for by the Smiths. The company had a plan whereby it issued policies of $2,500 or less without medical examination and the policy issued to Ernest Smith was under this plan. Estes further testified that Ernest Smith told him to deliver the policy to Mrs. Stephenson, and when informed he would have to sign a receipt for the policy, he directed him to have Mrs. Stephenson sign his name

to the receipt, and the policy was delivered and re-ceipted for as directed by insured.

After the company received notice of the death of insured, a representative from the legal department of appellant, accompanied by an attorney from Paducah and the district agent who had supplanted Mr. Massie at Paducah, went to the home of L. E. Stephenson, where he procured Mrs. Stephenson to surrender the policy, paying to her the sum of $95.90 and surrender-ing a note for something over $100 which had been ex-ecuted by Mr. Stephenson in satisfaction of the balance of the premiums on the policies issued to the Smiths.

The representative from the home office testified that before going to the Stephenson home, he procured an affidavit from Mrs. Minnie Smith, mother of insured, to the effect that L. A. Stephenson had been trying to get her to take out insurance on all her children and her husband ever since he had married her daughter; that she protested that she was not able to keep up the premiums, whereupon he told her he would keep them up if she would agree to let him keep the amount of the policies above burial expenses in case one of them died; that Ernest Smith had suffered from rheumatism ever since he was about four years of age and it was neces-sary to have doctors to attend him practically all his life.

The agent from the home office testified that he first talked to Mrs. Stephenson and then called the other attorney and agent to witness the settlement; that he merely advised Mrs. Stephenson in the presence of her husband that material misrepresentations had been made in the application and pointed them out; that he showed her the affidavit signed by her mother and also other documents which he had in his possession. He told her he was there for the purpose of returning the premiums the company had received on the policy and would give her a small sum in addition; that it would be necessary to institute suit to rescind the con-tract unless it was settled in that way. He did not state what the other documents he exhibited to Mrs. Stephenson were, nor did he file them with his depo-sition. Neither the agent nor the attorney who accom-panied him to appellee's home were called as witnesses.

Mrs. Stephenson testified that three men came to her home one morning while she was washing and one

of them told her the company had sent him to get the policy; that the policy was invalid because some of the papers about it were not fixed up right; that her brother had killed himself when the policy had not been in force for a year and all the company owed was the amount he had paid as a premium. Part of her evidence as to what occurred is as follows:

"I told him that I thought that the policy was for $2,000.00, but he said it wasn't good for anything except $45.46, and that I couldn't get any more than that. I did not want to give the policy up, but he said that was all that was due me and that I couldn't get any more. I told him I wanted to see about it and he said, 'If you will give it up I will give you $45.00 but if you don't do it I will go to town and draw a suit against you and make you give it up and make you pay the costs, and you will have to employ a lawyer and then you won't get anything.' He just scared me into giving it up to him."

She further testified that she had had no experience in business matters and had little education, having completed only the second grade in the common school; that he read to her the part of the policy which provided that nothing would be paid if the insured destroyed his own life, told her that he wanted to give her all she was entitled to, and that she relied on his statements and gave up the policy.

Counsel for appellant cite a number of authorities to the effect that courts look with favor on compromise agreements having as their object the amicable settlement of doubtful rights, and that mere inadequacy of consideration will not control in testing the validity of such agreements. It might be added that courts do not discountenance business acumen, and will not interfere with a legitimate transaction merely because one of the parties through folly or want of sound business judgment may sustain a loss in bargaining. On the other hand, it may be said with equal verity that equity looks with disfavor on fraud, deception, or misrepresentation. And while inadequacy of consideration alone may not afford ground for relief, yet where the inadequacy of consideration is so great as to cause the mind to revolt, a court of equity will lay hold on the slightest circumstance of deception, oppression or undue advantage to

set aside and annul the contract. Black on Rescission, 171; Musselman v. Knott, 7 Ky. Law Rep. 380; Hough's Adm'rs v. Hunt, 2 Ohio, 495, 15 Am. Dec. 569; Order of United Commercial Travelers of America v. McAdam, 125 F. 358, 61 C. C. A. 22; Rauen v. Prudential Ins. Co., 129 Iowa, 725, 106 N. W. 198; Goodson v. National Masonic Accident Ass'n, 91 Mo. App. 339.

Where a beneficiary in a policy, relying on representations of the insurer and without understanding her rights, accepts a less sum than that provided for in the policy, the acceptance is without consideration. American Patriots v. Cavanaugh, 154 Ky. 653, 157 S. W. 1099; Rauen v. Prudential Ins. Co., supra; Hayes v. Mass. Mutual Life Ins. Co., 125 Ill. 626, 18 N. E. 322, 1 L. R. A. 303.

Where a beneficiary is taken by surprise and required to act at once, without opportunity to ascertain the facts or secure legal advice as to her rights, a settlement for less than the amount of the policy is invalid. Cooley on Insurance, 6636; Order of U. C. T. of Am. v. McAdam, supra. Viewing the evidence in the light of the foregoing and other authorities that might be cited, it is apparent that this court would not be warranted in disturbing the action of the chancellor in setting aside the agreement whereby the policy was surrendered by the beneficiary.

In paragraph 3 of the answer, it is alleged that the policy was procured through false and fraudulent statements and misrepresentations in the application, in that the question, "Have you ever had gout, goitre, rheumatism?" is answered, "No." It is alleged that the applicant had, in fact, been afflicted with rheumatism from his early youth and that the policy would not have issued if the company had known that he was or had been so afflicted; that in issuing the policy it relied on the statements in the application. This paragraph sets out certain terms and conditions contained in the application which are in substance that the applicant has carefully read all the answers and that they are written as made: that each is full, complete, and true and made to obtain the insurance applied for; that they are each material to the risk; that the company believes them to be and will act and rely upon them.

It is not denied that Ernest Smith had a severe attack of rheumatism in 1923 and was treated by a

physician, but the evidence for appellee is that he completely recovered in a month or so and there had been no recurrence of the trouble.

For appellant, Dr. Little testified that he treated the insured in September and October, 1923, for acute articular rheumatism, involving the ankle and wrist joints and accompanied by high temperature. Dr. Adams testified that in May, 1928, he was called to the Smith home to treat Mrs. Smith, who was ill of inflammatory rheumatism and pneumonia; that before Mrs. Smith had completely recovered he was requested to examine her boys, Ernest Smith and James Smith, both of whom had rheumatism and had had for quite a little time preceding the examination; that the ankle and knee joints of Ernest Smith at that time were swollen; and that he considered his case practically incurable.

The father, brothers, and sisters of Ernest Smith testified that he was never afflicted with rheumatism after his recovery in 1923; that Dr. Adams never examined or treated him while he was attending Mrs. Smith in 1928, but that it was another brother who was treated by Dr. Adams and who exhibited to him the swollen knee and ankle joints. A number of witnesses who had known Ernest Smith for a number of years and for whom he had worked testified that they never knew of his being afflicted with rheumatism after 1923. The insurance agent who took the application testified that he had been acquainted with him for a number of years and at one time had employed him to do some work; that he knew nothing of his having rheumatism and considered him in good health. It is further in evidence by those who were present when the application was taken that Ernest Smith did tell the agent that he had had an attack of rheumatism in 1923 but had recovered from it.

It is urged by counsel for appellant that the evidence of a layman as to the physical condition of a person cannot prevail against the evidence of a physician who examined and treated him.

It has been held by the court that a layman cannot diagnose diseases nor testify as an expert with reference thereto, but may testify as to matters within his knowledge concerning the vigor and apparent physical condition and as to well-known and recognized symptoms indicating disease. Sovereign Camp, W. O. W.,

v. Morris, 212 Ky. 201, 278 S. W. 554; Equitable Life Assurance Society of U. S. v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703, and cases therein cited. And apart from this rule it must not be overlooked that there is evidence indicating that Dr. Adams did not examine or treat Ernest Smith for rheumatism, but treated other members of the family for that disease. There is also much evidence to indicate that the applicant did in fact make truthful answers to the questions asked him by appellant's agent. Considering the evidence on this question and other proven facts and circumstances as shown in the record, we have concluded that the chancellor's finding in this particular is fully sustained.

Contention by counsel for appellant that the policy was not actually delivered to Ernest Smith, and therefore under its terms is void, is wholly without merit. The evidence clearly establishes that insured directed that the policy be delivered to his sister for him and that she receipted in his name for it. In fact, the agent so testified. The provisions of a policy as to the method of delivery may be waived by the agent of the company who is authorized to solicit business and deliver policies for the company. Connecticut Indemnity Ass'n v. Grogan, 52 S. W. 959, 21 Ky. Law Rep. 717.

It is further insisted by counsel for appellant that because neither Mrs. Stephenson nor her husband had an insurable interest in Ernest Smith it is a wagering contract and therefore void. We find no authority indicating that a sister has no insurable interest in the life of a brother and none have been pointed out. It seems to be the settled policy in this jurisdiction that an insurance policy taken on the life of another by one who had no insurable interest in such other is void. Prudential Ins. Co. v. Cummins' Adm'r, 44 S. W. 431, 19 Ky. Law Rep. 1770, and Western & Southern Life Ins. Co. v. Nagel, 180 Ky. 476, 203 S. W. 192; Cooley on Insurance, 348. But it is equally well settled that one may take out insurance on his own life and designate whom he pleases as beneficiary. Allen's Adm'r v. Pacific Mutual Life Ins. Society, 166 Ky. 605, 179 S. W. 581; Rupp v. Western Life Indemnity Co., 138 Ky. 18, 127 S. W. 490, 29 L. R. A. (N. S.) 675; Hess' Adm'r v. Segenfelter, 127 Ky. 348, 105 S. W. 476, 14 L. R. A. (N. S.) 1172, 128 Am. St. Rep. 343. The evidence shows that Ernest Smith did not have sufficient funds

to pay the full amount of the initial premium and that he paid $20 in cash; that his brother-in-law L. A. Stephenson, agreeing to assist him until he was able to pay the premium, gave his check for the balance due. There is little indeed in the record having the quality of competent evidence to sustain the contention made by appellant.

The judgment of the chancellor finds such support in the evidence as forbids interference on the part of this court.

Judgment affirmed.