## Electric Bakeries v. Stacy's Adm'r.

(Decided Dec. 16, 1933).

CRAFT & STANFILL and HUFFAKER, HOGAN & BERRY for appellant.

JESSE MORGAN and H. H. SMITH for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The Electric Bakeries has appealed from a $5,000 judgment recovered against it by S. B. Stacy, administrator of William Edwin Stacy, for the death of his intestate.

The Electric Bakeries owned a one and a half ton truck, which it used for the transportation of its products and supplies. To prevent its chauffeur from allowing any one to ride with him, it cut out the right-hand part of the seat of this truck, before putting it into service, thus leaving a seat for the chauffeur only, and the chauffeur testifies he knew this was done to allow no one to ride with him; nevertheless on July 31, 1931, the chauffeur of this truck started with it to Jackson, Ky., and took William Edwin Stacy, a fifteen year old boy, with him. On the way the truck left the road, overturned, and killed the boy. This suit was brought to recover for his death, which is alleged to have been caused by the improper operation of the truck; the particular negligence relied on being the alleged excessive speed of the truck at the time it left the road. The Electric Bakeries insists it was entitled to a directed verdict, because this chauffeur had no authority to allow the boy to ride with him, and was not acting within the scope of his employment when he did so. That is true. See Armstrong v. Sumne, etc., Co., 211 Ky. 750, 278 S. W. 111; 42 C. J. 1104, sec. 865; 39 C. J. 1304, sec. 1502; 45 C. J. pp. 821, 822, secs. 231, 232; 52 C. J. 632, sec. 2179; Monnet v. Ullman, 129 Or. 44, 276 P. 244; Zampello v. Fitzhenry, 97 N. J. Law, 517, 117 A. 711, 24 A. L. R. 666; Wilson v. Ry. Co., 66 Kan. 183, 71 P. 282; Hartigan v. Public Ledger, 291 Pa. 588, 140 A. 524; Gamble v. Uncle Sam Oil Co., 100 Kan. 74, 163 P. 627, L. R. A. 1917D, 875; Walker v. Fuller, 223 Mass. 566, 112 N. E. 230; White v. Brainerd Service Motor Co., 181 Minn. 366, 232 N. W. 626; Zavodnick v. A. Rose & Son, 297 Pa. 86, 146 A. 455.

"The driver of a motor vehicle sent on a

particular mission by the owner of the machine is, as a general proposition, acting beyond the scope of his authority when without the knowledge of his employer he invites another person to ride with him, and if such a person is injured through the negligence of the driver of the machine, the owner thereof will not generally be liable.''

Section 101, p. 266, vols. 7—8, Huddy's Automobile Law, citing Armstrong's Adm'r v. Sumne, 211 Ky. 750, 278 S. W. 111, and numerous other cases. See also Liggett & Myers Tob. Co. v. De Pascq, 66 Fed. (S. D.) 678.

The chauffeur, Burke, was employed for the operation of this truck in the transportation of bakery products and supplies. He had no authority to transport a passenger, and when he transported decedent, unless it were done with his master's consent, he was disobeying his instructions, was untrue to his master, and no matter how often this was done, unless the master knew of it and consented to it, the boy was a guest, as regards the chauffeur only and was a trespasser as regards the bakery. The multiplicity of the chauffeur's violations of his duty to his master, in this regard, only aggravates and increases his perfidy, it does not increase the rights of his guest who is and always remains a trespasser as to the master unless the latter has actually consented that the trespasser may ride or has such knowledge of his repeated and habitual trespasses as to imply a consent that he may ride.

There was, so the appellee contends, some evidence that George Young, the manager of the Electric Bakeries, knew of this boy's habitually riding on the truck. If he knew of it, and consented to it, then it was he and not the chauffeur who allowed this boy to ride.

### Actual Consent.

There is no evidence Young had any actual knowledge or gave actual consent that the boy might go on this trip. The evidence indicates the contrary. In loading this truck for this trip, it was first driven to the old bakery, the boy was there and certain bakery products produced at the plant were loaded into the truck, then it was driven to the new bakery about two squares distant and some products of that plant were loaded and the boy helped to some extent in that, then the truck was driven past the old bakery to a gas

station, where it took on the gasoline necessary for the trip, and thence it started on its way to Jackson. It is rather significant that the boy did not ride from the old bakery to the new one, or from the new one past the old bakery to the gas station, and that he first got on the truck at the gas station. In view of the natural propensity of boys to ride, there is but one way to account for his action. He was expecting to go on this trip, for he had asked his mother the night before to allow him to go; but he did not want Young to see him, and there is no evidence Young did see him, and so there was no evidence of actual consent by Young.

## Implied Consent.

Ralph Miniard, the chief baker, employed by the defendant, testified this boy was in the habit of riding with Burke and that George Young knew it, but he gave no detail regarding this habit, how long it had continued, or how many trips the boy had made or where, and gave no statement of how he knew George Young knew of this. He testified that Young did so, but his cross-examination indicated no substantial basis for such claimed knowledge.

No importance can be attached to what Miniard himself knew, as he was not shown to have any executive authority. His supposition that Young knew of this, and his guess that he did, is of no probative effect. The conversation of this witness with the boy, not in Young's presence, should not have been admitted, and as he did not tell when or where Young had seen the boy on the truck, the evidence of this witness amounts to nothing.

The testimony of the boy's sister relative to a conversation had with Young after the accident does show that Young saw this boy sitting on the running board of this truck while it was standing there near the bakery that morning, later she said this was about 1 o'clock, but she does not show that there was any indication the truck was presently to start. Seeing this boy sitting there then was perhaps what caused Young to ask this witness, after the accident, if her brother went with Burke; but it is no evidence Young consented for him to go, or had any idea he was going. Her testimony that Young sometimes knew of the boy riding with Burke is about all there is of any weight in her testimony.

In the testimony of the chauffeur, Burke, there is no mention of an habitual riding of the boy with him or that Young knew of it or knew the boy was going with him on this trip.

Young's testimony is that he did not know this boy was going with Burke or ever had ridden with him; that the seat had been cut out to make it easier for the chauffeur to refuse rides; and that he had told Burke to not let any one ride, not even his brother.

Was there enough evidence here of this boy's habitually riding on this truck to show that Young had impliedly consented to it? To start with, Burke was the one responsible for this boy's death. If he was driving fast, and that speed, in view of the road at the place and of the traffic thereon at the time, was improper and was the proximate cause of the wreck in which the boy lost his life, Burke is liable therefor. See instruction prepared in Utilities Appliance Co. v. Toon's Adm'r, 241 Ky. 823, 45 S. W. (2d) 478. If the chauffeur had been acting within the scope of his employment (which he was not when he invited this boy to ride), then the bakery would also be liable therefor, but it is a harsh doctrine to ever make a master who in no way contributed to the accident responsible for what the servant does, but it is necessary to do so for this reason, which we pointed out in Bowen v. Gradison Const. Co., 236 Ky. 270, 32 S. W. (2d) 1014:

> "It is only by imposing vicarious liability upon employers that such vigilance can be secured in the supervision of the men in their employment, as is needed, to protect others. It is only by such a rule that employers can be forced to weed out the reckless and the incompetent."

Now we are asked to go a step farther and to impose upon the master responsibility for his servant's negligence, when he had stepped aside and was not acting within the scope of his employment, but in violation of his master's orders, because forsooth the servant had formed such a habit of so stepping aside as to imply that the master had consented thereto.

Our real question is not whether or not this unfortunate boy may have ridden on this truck previously upon Burke's invitation, for since Burke testifies he was to allow no one to ride, the presumption is he did

not tell Young he had allowed the boy to ride, nor indeed is our question whether or not Young knew the boy had ridden on the truck previously, but whether this had occurred so frequently and habitually to and with the knowledge of Young that it may be said therefrom that it was done with Young's consent. Let us remember that ordinarily in human affairs, things do not just happen; they are caused to occur. Mortals are often the architects of the fortunes and misfortunes of themselves or their fellows, and we can from their conduct usually learn just why they so conduct themselves, and it was not a chance occurrence that this boy did not ride upon this truck and Burke was alone upon it as it went to and fro in gathering up its load. They had a reason for their doing so. It looks like it was because Burke and this unfortunate boy knew Young would not let this boy go upon this truck if he knew it, and they were endeavoring to keep him from knowing it, by not having the boy upon it in and about the loading of it, and until after it had passed these plants and was ready to go. We have never undertaken to say how long such a bad habit would have to continue before the master would be held to have impliedly consented thereto. In Wolford v. Majestic Collieries Co., 192 Ky. 640, 234 S. W. 204, we held eight or ten years was enough, and in Louisville & N. R. Co. v. Steele, 179 Ky. 605, 201 S. W. 43, L. R. A. 1918D, 317, we held some two years or more was enough, and we are not laying down here any definite rule as to length of time, but are simply holding that such nebulous proof as we have here was not enough and that under the evidence here the court erred in overruling the motion of the defendant for a directed verdict. All other questions are reserved.

The judgment is reversed.