## Equitable Life Assurance Society of the United States v. Spencer.

(Decided Feb. 4, 1936.)

WM. MARSHALL BULLITT, EUGENE B. COCHRAN and BRUCE & BULLITT for appellant.

F. A. HARRISON for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—

In June, 1931, the Equitable Life Assurance Society of the United States issued to Raymond J. Spencer an insurance policy insuring his life in the sum of $5,000. In part the policy provided in substance and effect that if the insured should become totally disabled, due to bodily injury or disease, the insurer would, subject to the conditions set out in the policy,

and which it is unnecessary to enumerate or detail, pay to the insured $50 per month during the continuation of such disability and would waive payment of all premiums upon the policy falling due after the commencement of such disability and during its existence.

In March, 1932, insured, claiming to have become totally disabled within the meaning of the terms of the policy, made and furnished to insurer claim and proof as required by the policy, and insurer upon receipt and consideration of the proof paid to insured as disability benefits the sum of $50 per month for nine months up to and including April 17, 1933. Thereafter further payments were refused, the insurer claiming that the continuance of the benefits under the policy was conditioned upon insured being rendered wholly unable to engage in any occupation or to perform work of any kind for compensation or value, and that it had information indicating that insured was able to perform some work of his occupation.

After his demand for continuance of the disability benefits had been refused, insured instituted this action setting up the provisions in the policy and alleging in his petition as amended that due to disease he had become totally and continuously disabled since March, 1932, and he prayed for judgment of $50 per month from April 17, 1933, up to the date he filed the amended petition, amounting in all to $950, and also for the sum of $158.46 paid as a premium on the policy during the continuance of the disability.

At the close of the evidence for plaintiff, the defendant offering no proof, the court sustained plaintiff's motion for a directed verdict, and from a judgment in conformity with the verdict and prayer of the petition, defendant is appealing.

The three points argued by counsel for appellant, in substance, are: (1) That appellee's claim is supported only by his own testimony; (2) that his claim is so unusual and his testimony so unsatisfactory that one may reasonably doubt his right to recover; (3) that the court should not have given a peremptory instruction for appellee on only his doubtful and unsatisfactory testimony. These contentions call for a detailed statement of the evidence.

According to the evidence of appellee, he is a

farmer, 35 years old, and prior to March, 1932, was in good health, doing general farm work, but on that date became and has since been totally and permanently disabled as a result of disease, suffering from nervousness accompanied by severe, painful headaches. These headaches would sometimes last for weeks at a time with little surcease. The trouble has not responded to treatment, but has grown worse. He first consulted and was treated by a local physician, upon whose advice he, in June, 1932, went to Dr. MacIntire, a physician in Cincinnati who specializes in mental and nervous troubles, and has since been under his care and treatment. However, at times when he was unable to get some one to drive him to Cincinnati he would go to a local physician for treatment and medicine. Dr. MacIntire diagnosed his trouble as migraine, which is a form of headache popularly called sick or nervous headache and is of a neuralgic nature and frequently accompanied by nausea. After he first became afflicted, he tried to work but was unable to do anything. He thereupon ceased trying to do any work, because his condition was such that he knew he could do nothing and his training and education is not of such character to permit him to do any work except as a farmer or laborer.

Dr. MacIntire testified that appellee came to him in June, 1932, and had returned several times since and had been under his care; that he diagnosed the trouble as migraine, a nervous disease characterized chiefly by headaches and exhaustion; that there are no physical signs of the disease manifested, and therefore subjective complaints are the conditions upon which diagnosis must be made; that he could only gauge the patient's ability to work at his regular occupation by the history given him by the patient; that some patients with migraine can work and some are not able to; that according to the history given him, appellee has been incapacitated since he first began treating him. When asked whether he considered appellee's condition permanent, he replied that he considered most cases of migraine permanent and believed appellee's condition was permanent and that he was in a weakened and nervous condition. When asked on cross-examination what objective symptoms he found of migraine in connection his examination, he replied:

"The only thing you find is a hyper-irritabil-
ity of the nervous system with increased deep re-
flexes and irritable pulse and signs of a sympathet-
ic nervous system and over stimulation. These
are not organic signs. They are functional signs."

He stated that he would sometimes see the patient ev-
ery two weeks but mostly every month, and there had
been no appreciable improvement in his condition and
he had about the same number of headaches. When
asked if people suffering from migraine could continue
doing substantially their normal work, he replied:

"They can if it is mental work. I have never had
a case of migraine that I can recall that did heavy
physical work. Most of the cases have been clerks,
attorneys and doctors and they are incapacitated
during the time of headache and at other times
they can usually carry on their usual work."

Dr. J. W. Shupert, a local physician, testified that
appellee had called at his office a number of times and
that he gave him migraine tablets; that he had made
no examination since he had been under treatment of
Dr. MacIntire; that he had seen him when he was suf-
fering badly from headaches; that a strain of nerves
exists with migraine, and some patients were not total-
ly disabled but that some were. According to the ev-
idence of tenants on the Spencer farm and neighbors
on adjoining farms, appellee did general farm work up
until 1932, but since that date had done no work on the
farm or even light chores, but remained about the
house practically all the time; that when he did go out
others would drive him. Some witnesses testified that
he would sometimes drive his automobile to Glencoe, a
village about three miles from his home. One of these
witnesses was permitted to state without objection that
appellee was not able to do any work at all in 1932.
These witnesses testified that appellee complained of
headaches. Lula May Webster, who testified that she
had lived in the Spencer home for the last seven
months, stated that appellee would very often go as
long as two days without coming to the table or with-
out anything to eat; that he was not able to and did
not do any work; that he complained of headaches prac-
tically every day.

Concerning the first point in appellant's brief, it
is at once apparent from the foregoing recital of the

facts developed by proof that appellee's claim is not supported alone by his own testimony. Question is made concerning the value of the testimony of Dr. MacIntire because his diagnosis and opinion was, as he stated, necessarily based upon the history given by the patient and subjective rather than objective symptoms. Dr. MacIntire and the other physicians who testified stated, and it is a matter of common knowledge, that many physical ailments are not manifested by objective symptoms. Dr. MacIntire did testify that appellee was in a weakened nervous condition and to this extent fully corroborated appellee, and it further appears that migraine is accompanied by these conditions.

It is a rule that physicians who examine a patient for the purpose of treatment may testify as to what the patient stated, but will not be permitted to do so where the examination is made for the purpose of qualifying the physician as a witness. Chicago, St. L. & N. O. Ry. Co. v. Rowell, 151 Ky. 313, 151 S. W. 950; Chesapeake & O. Ry. Co. v. Wiley, 134 Ky. 461, 121 S. W. 402.

While no objection was made to the evidence of lay witnesses and therefore no question concerning the competency of the evidence could be raised on appeal, we find the general rule to be that layman cannot diagnose disease nor testify as experts relative thereto; however, a layman may testify concerning matters within his knowledge concerning apparent physical vigor or conditions and to commonly known and recognized symptoms of disease. Inter-Southern Life Insurance Co. v. Stephenson, 246 Ky. 694, 56 S. W. (2d) 332, 333, and authorities therein cited. One witness testified that appellee was unable to work and stated that he complained continuously of headaches and often went as long as two or three days at a time without atempting to take any food or nourishment.

With reference to the second point, counsel for appellant say:

"That an able bodied farmer would be totally disabled for 32 months from headache alone so that he was totally unable during all that time to work on his farm is an unusual circumstance. Headaches ordinarily are temporary, rather than permanent

afflictions; they disable one for a few hours or a day and then they disappear.''

Practically all men at times have headaches, which are usually of short duration. However, according to the evidence of Dr. MacIntire, appellee's affliction is more than a headache; it is ''nervous disease characterized chiefly by headaches and exhaustion.'' And according to his evidence and that of local physicians, it often does continuously and totally disable its victim. Evidently appellant was certain in the beginning that appellee was totally disabled, else it would not have paid disability benefits for nine months, and his evidence that there has been no improvement in his condition is not without corroboration.

In support of the third contention made by counsel for appellant, the following cases are cited: Baltzell v. Ates, 181 Ky. 413, 205 S. W. 548; Ellis v. Schlentker, 11 Ky. Law Rep. 999; Globe Indemnity Co. v. Daviess, 243 Ky. 356, 47 S. W. (2d) 990; 64 C. J. 358. The general doctrine as gathered from these cases is that uncorroborated testimony of a party to an action is not sufficient to warrant a peremptory instruction although uncontradicted. From what we have already said it is obvious that the doctrine announced in the cases cited is not controlling in this instance because we have not only the competent, unimpeached, reasonable, and direct evidence of appellee, but we have the evidence of disinterested witnesses corroborating him.

> ''The general rule is that uncontradicted evidence free from inherent improbabilities when given by disinterested witnesses and in no way discredited is conclusive.'' Jones, Commentaries of Evidence (2d Ed.) 4887.

In this jurisdiction it is an established doctrine that, ''where the facts of a case are undisputed and but one legitimate inference can be drawn from them, the court, and not the jury, should determine their effect.'' Wood-Hick et al. v. Roll et al., 183 Ky. 128, 208 S. W. 768, 769, and cases therein cited.

Here, the uncontradicted evidence of appellee, as supplemented and corroborated by evidence of disinterested witnesses in no way discredited, is of such a nature and character as to lead inevitably to one con-

clusion and leave no room for honest difference of opinion among reasonable men, and in such a state of case, the court did not err in directing a verdict.

Judgment affirmed.