## Thomas' Guardian v. Bowman Watts Co.

### (Decided March 27, 1936.)

NAPIER & EBLEN for appellant.

CRAFT & STANFILL for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—
Reversing.

The appeal is from a judgment based on a directed verdict.

The only question is whether there was sufficient evidence of negligence to take the case to the jury.

Briefly stated the facts are: The Bowman Watts Company owned a truck which was driven by Alvin Dalton. According to William Marion Thomas, who was seven years of age at the time of the accident, he and his ten year old brother James and several other boys between the ages of six and thirteen had on several occasions assisted the truck driver in pushing the truck out of the garage and down the street until the truck was in a position to coast down a small hill. He and the other boys assisted the truck driver in this manner at the truck driver's request. In return for this service, the driver would permit the boys to ride in and on the truck down the street to the main highway, where he would stop and the boys would get off and go back to school. On the morning of the accident, Wm. Marion Thomas and several other little boys between the ages of six and thirteen stopped at the garage, and at the solicitation of the driver helped him push the truck out of the garage and in a position where the right-hand side of the truck was immediately in front of the garage door. While the truck was in this position, the driver closed the doors of the garage, walked around the front of the truck, and entered the cab from the left-hand side. While he was doing this, some of the boys got on the truck and others remained on the ground to help get the truck started. Wm. Marion Thomas was lying on the right running board and fender of the truck, and was holding to the bed of the truck. He had on a red coat or jacket, and as the

truck driver passed around the front of the truck, he saw Marion and said, "Hold on." Thereupon the driver got into the cab, started the truck, and, after it had gone a short distance down the street, Marion fell off, the rear wheels passing over him and injuring him severely. Marion's evidence was corroborated by that of his brother and several other little boys, who testified in substance that for several weeks the driver of the defendant's truck had found it difficult to get it started on cold mornings, and, as the garage was near the school building, they would help push the truck down the street in order that the driver might get the motor started. They did this at the request of the truck driver, who not only permitted them, but invited them, to ride on the truck down to the state highway.

In support of the ruling below, it is argued that, in the absence of a contrary showing, the driver of a truck has no implied authority to invite third persons to ride with him, and, if he does so and a third person is injured the master is not liable. The rule may be conceded, and, if liability in thise case were predicated solely on the fact that the driver permitted or suffered the Thomas child to ride on the truck, there can be no doubt that the peremptory was proper. Electric Bakeries v. Stacy's Adm'r, 252 Ky. 20, 66 S. W. (2d) 70; Zampella v. Fitzhenry, 97 N. J. Law, 517, 117 A. 711, 24 A. L. R. 666. But the facts of this case bring into play a different principle. Thus in the case of Louisville & N. R. Co. v Steele, 179 Ky. 605, 201 S. W. 43, L. R. A. 1918 D, 317, there was evidence that several young boys between six and fifteen years of age, with the knowledge and permission of the conductor, were in the habit of jumping on, riding, and jumping off a coal train that passed through the village of Graves, and that Noble Steele, a boy eight years old, while attempting to alight from the steps of the car on which he was riding, was drawn under the wheels and both of his feet were cut off. It was held that, though it was the habitual practice of boys, including plaintiff, to jump on and ride moving trains without permission, the railroad company would not be liable, if one of them got hurt while so trespassing, unless his place of danger on the train was actually discovered in time to prevent injury to him by the exercise of ordinary care; but, where they were habitually permitted by the conductor to jump on and ride such trains, the company vol-

untarily assumed the duty of anticipating that they would do what he had permitted, and the further duty of exercising ordinary care to protect them from injury. It is true that the attractive nuisance doctrine played no small part in the decision, and the court stressed the fact that the getting on and off moving trains was not only very alluring to children, but extremely dangerous, and, though riding on the outside of a truck may not be as attractive and dangerous to children as jumping on and off a moving train, the situation is an appealing one and the danger quite obvious.

No emphasis can be placed on the fact that the driver invited or permitted the children to ride with him, as that was clearly beyond the scope of his employment. In view of the fact that some of the children were old enough to ride anywhere on the truck with safety, and even children of tender years could ride in the truck without being subjected to great peril, we are not disposed to hold that the situation was such as to impose on the driver the duty of seeing that the children present did not occupy dangerous positions on the truck. However, it is clear, we think, that if the driver, as the evidence tends to show saw the Thomas child in a place of peril from which he might fall, or be caused to fall, by the operation of the truck, it was his duty to use ordinary care not to injure him.

We are not without authority for this position in other jurisdictions. In Kalmich v. White, 95 Conn. 568, 111 A. 845, 847, a child was invited by the driver to assist in unloading scrap metal, and, while the truck was in motion was requested to leave the driver's seat, and stand on the running board, so as not to interfere with the operation of the truck. He was thrown from the running board and injured when the truck turned a corner at a high rate of speed. In holding that it was error to enter a nonsuit, the court said:

"'The condition then existing was one which is not uncommon, where the presence of a trespasser on a moving vehicle becomes known to the servant or servants controlling its movements in the ordinary course of their employment, and it is an elementary proposition that the rule of respondeat superior then begins to operate.'"

In Stipetich v. Security Stove & Mfg. Co. (Mo. App.) 218 S. W. 964, 967, the driver of a truck invited

530

a boy to get on the truck, and, while the boy was attempting to climb on, the driver suddenly started the truck and injured him. Though holding that the driver's invitation to ride was an act beyond the scope of his authority, and that with respect to the driver's employer the boy occupied the status of a trespasser, the court said: "But, even so, the driver in the subsequent prosecution of his master's business owed the boy the duty of using reasonable care not to injure him after he was discovered and known to be in a place of imminent danger or peril."

There being evidence tending to show that the driver of the truck failed to use ordinary care to avoid injuring the boy after his peril was discovered, it follows that the peremptory instruction should not have gone.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.

Whole court sitting.