## Greer et al. v. Richards' Adm'r.

### Same v. Bowman

### Same v. Hesler

(Decided Feb. 1, 1938.)

WOODWARD, DAWSON & HOBSON and WALLS & KINCH-ELOE for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

On April 11, 1936, a taxicab owned by L. M. Rush and which at his instance was being driven by his son, Elvis Rush, and an automobile owned by Joe Greer, but which was being driven by Robert Kendall, came in collision on highway No. 60 in Breckinridge county, a short distance west of the Sinking creek bridge As a result of the accident, Isabel Bowman and Louise Hesler, occupants of the taxicab, sustained injuries and Earl Richards, who was riding on its left running board, was killed.

In actions against the owner and driver of both of the cars, the administrator has recovered judgment in

the sum of $5,000, and Misses Bowman and Hesler have recovered judgments in the respective sums of $5,000 and $500, and all the defendants are appealing from each of the judgments.

All the actions were based on the alleged concurrent negligence of the drivers of the two automobiles. The answers of Greer and Kendall consisted of a general denial and also affirmative pleas of contributory negligence upon the part of the driver of the other automobile and of the plaintiffs, and that the accident and resulting injuries were due solely to the negligence of the driver of the other car. The answer of the other defendants was in effect the same. The affirmative allegations of the answers were traversed by subsequent pleadings.

At the outset we may dispose of appellant's contention that the trial court erred in ordering the cases heard together over their objection. A similar contention was made in Herndon v. Kentucky Traction & Terminal Company, and Clarke v. Kentucky Traction & Terminal Co., (4 cases) 214 Ky. 36, 281 S. W. 1036, 1037. The opinion held the contention to be without merit. All the cases grew out of the same accident and in the course of the opinion it is said:

"But the main issue, as to whether or not the appellee was negligent and caused the accident, was precisely the same in each of the four cases, and, although the issues as to contributory negligence were different, this difference could be and was easily taken care of in the instructions so as to prevent a possibility of any undue advantage to any party upon the trial."

The opinion in that case followed the prevailing rule in this jurisdiction as shown by cases therein cited, one of which is Benge's Adm'r v. Fouts, 163 Ky. 796, 174 S. W. 510, 515, wherein it is said:

"Whether the cases should have been tried together was a matter in the discretion of the trial court, and such discretion should not be interfered with on appeal unless it is clearly made to appear that the discretion was abused."

Clearly, there was no abuse of discretion in this instance since the trial of the cases together was in no-

wise calculated to prejudice the rights of appellants or either of them.

Apparently the principal ground urged for reversal in each of the cases in effect is that the court erred in overruling appellants' motion for directed verdicts because Richards and Misses Bowman and Hesler were each guilty of such contributory negligence as precluded recovery, it being maintained that Richards, an intelligent young man, who knew and appreciated the danger of riding on the running board, placed himself in such a dangerous position as to readily bring about the accident which resulted in his death and that he, in riding on the running board and the two young ladies who were injured in riding in an overcrowded taxicab in contravention of section 2739j-22, Kentucky Statutes, were guilty of negligence and their violation of such statute constituted negligence per se and precluded recovery. In argument that young Richards was guilty as a matter of law, counsel for appellants refer to a number of Kentucky cases, however, none of them so hold; but, on the contrary, all hold that the question as to whether one is guilty of contributory negligence in riding upon a running board of an automobile is a question to be determined by the jury. See Cincinnati, N. & C. Railway Company v. Rairden, 231 Ky. 141, 21 S. W. (2d) 236; Bell & Bell v. Rascoe, 250 Ky. 756, 63 S. W. (2d) 932; Tyler Co. v. Kirby's Adm'r, 219 Ky. 389, 293 S. W. 155, 157; Paducah Railway Company v. Nave, 204 Ky. 733, 265 S. W. 289; and authorities cited in those opinions.

A number of cases from foreign jurisdictions relied upon in substance hold that riding on a running board of an automobile, etc., in violation of a statute or city ordinance is contributory negligence as a matter of law and recovery is thereby precluded, but so far as our research discloses, all those cases were dealing with penal statutes or ordinances directed against the person so riding on the motor vehicle. Section 2739j-22, cited and relied on by counsel for appellants, provides in effect that the operator of a motor vehicle engaged in transporting passengers for hire shall not permit a greater number of passengers than 25 per cent. over its seating capacity, etc., and that passengers shall not be permitted to ride upon the step or running board of such motor vehicle. It will therefore be seen that this is a regulatory statute and that its purpose is to prevent

abuses by carriers that might result in danger or inconvenience to the traveling public, and it is not a penal statute against passengers or other persons who may ride in or upon such motor vehicle.

The evidence discloses that at the time of the accident ten persons, including the driver, were riding on the inside of the taxicab which was a five-passenger sedan and Richards was on the running board. Greer and Kendall and two young ladies were in the former's automobile which was a coupe. The accident occurred near midnight. The driver of each car discovered the other approaching when some distance away. According to the occupants of each car, the other was being driven to its left of the center of the road. The taxicab, which was going westwardly, overturned two or three times after the collision and landed in a ditch on the south side of the road and the other automobile swerved across the road and headed into a bank on the north side. They sideswiped and both were badly damaged especially on the left side. The paved portion of the highway was 18 feet wide and shoulders on each side were about 3 feet in width and covered with screenings or gravel so there was ample room for the automobiles to pass without danger to the occupants of either. It would serve no good purpose to enter into a detailed statement of the evidence. It is sufficient to say that there is ample evidence to warrant the jury's conclusion that the accident was due to the concurrent negligence of the drivers of the automobiles. Since, as indicated, the question of contributory negligence was a question for the jury and there was sufficient evidence to take the case to the jury and to sustain the verdict, it follows that appellants nor any of them were entitled to a directed verdict.

It is argued that the court erred in permitting a witness, who was at the scene a day or two after the accident, to testify that Elvis Rush pointed out to him where his taxicab stopped after the accident. Upon objection being made, the court admonished the jury that this evidence could be considered only as to Elvis Rush. In view of all the proven facts and circumstances, we do not regard the evidence complained of as having any material bearing and, in the light of the admonition given by the court, we unhesitatingly conclude that it was not prejudicial.

A short time before the accident occurred Elvis

Rush stopped to render assistance to some friends whose automobile had been wrecked. He turned back, took the driver of the wrecked automobile to his home, then returned to the scene where he picked up Richards, Miss Hesler, and two others and proceeded on some miles to where the wreck occurred. It is complained that a witness, who was present when Elvis Rush turned the taxicab to take the owner of the wrecked car to his home, was not permitted to state that in turning the car, Rush almost ran into him and into others standing in the road. It is manifest, in the circumstances shown, that this evidence was not competent for any purpose. It is further argued that the court erred in admitting evidence as to statements made by the two young ladies in Greer's automobile that they had cautioned the driver about speeding. Since, as already indicated, the driver of each car and their occupants testified that they were traveling at a rate of speed in excess of the maximum fixed by statute for passing automobiles and the physical facts and circumstances clearly conduce to show that both cars were traveling at a rate of speed much greater than that testified to by their occupants, this evidence, if inadmissible, was not prejudicial and manifestly had no weight in determining the verdict of the jury. Thornton v. Phillips, 262 Ky. 346, 90 S. W. (2d) 347.

Contention that the court erred in admitting in evidence two photographs of the highway at and near the scene of the accident is wanting in merit. The photographs reveal the general condition at that point and show that the road was practically straight and the driver of either car could see the other for quite a distance ahead.

There is likewise no basis for the contention that the instructions given were erroneous or that the court erred in not giving offered instructions. Because of the number of the parties and the complicated issues, it was necessary to give a number of instructions. It would unnecessarily encumber this opinion to set them out in full, but we have carefully read and considered them and find that they fully and properly present every issue made by pleading and proof with unusual clarity.

Counsel for L. M. Rush argue that a peremptory instruction should have been given in his favor because

it is shown that the taxicab was engaged by four young men for a trip to Louisville and return and that the driver, Elvis Rush, picked up young Richards and Misses Hesler and Bowman on the way back contrary to the orders of L. M. Rush. Electrical Bakeries v. Stacy's Adm'r, 252 Ky. 20, 66 S. W. (2d) 70, and other cases of like import are cited as supporting this contention. In the Electrical Bakeries Case it appears that the company owned a truck which was used for the transportation of its products and supplies. A chauffeur, using the truck for the purposes indicated, permitted a boy to ride on the truck contrary to company's instructions. On the trip the truck left the road and overturned, killing the boy. It was held that the chauffeur was not acting within the scope of his employment so as to render the owner of the truck liable. It was specifically pointed out in that case that the chauffeur was employed to operate the truck in the transportation of bakery supplies, with no authority to transport passengers. The other cases cited relate to privately owned trucks used in the prosecution of private business. No cases are pointed out by counsel and we find none applying this rule to motor vehicles engaged in carrying passengers for hire.

So far we have dealt with the questions common to all the cases, but we now turn to a consideration of questions relating to the individual cases. In the Hesler case, Dr. Kincheloe stated that Miss Hesler sustained a fractured collar bone and referred to an X-ray picture made by another doctor showing the condition. Objection made to this evidence was sustained, but the doctor later made some references to the broken collar bone. During the progress of the trial and after evidence concerning the fracture of the collar bone had been introduced, plaintiff, over the objections of defendants, was permitted to file an amended petition stating in substance that included in the injuries referred to in the original petition was a broken collar bone. Defendants asked that the swearing of the jury be set aside and the cause continued, but their motion was overruled and it is now argued that this was prejudicial error. Miss Hesler had already been permitted to testify without objections that her collar bone was broken in the accident. We are inclined to the opinion that under the allegations of the original petition proof of fracture of the collar bone was competent and ad-

missible, however, the court offered to permit defendants to further plead, but they indicated it would take some days to do so and the court then ordered that the amended petition stand controverted. It is at once manifest that the court did not err in refusing to continue the case for two or three days for an answer to this simple amended petition and on the record as a whole it is equally manifest that the motion to set aside the swearing of the jury and continue the case was properly overruled.

In the Bowman case, after Dr. Kincheloe, a witness introduced in her behalf, had made some reference to a fracture of her skull, plaintiff, over objections, was permitted to file an amended petition alleging in substance that the injuries referred to in the original petition included a fractured skull. The court overruled a motion to set aside the swearing of the jury and to continue the case because of the filing of the amended petition and as in the Hesler case it is now argued that this was error. As we view the matter, the evidence of a fractured skull might have been properly admitted under the original petition since it is alleged in substance that her head was crushed, therefore we unhesitatingly hold that no error was committed in this particular.

It is also argued that the court erroneously permitted the father of Miss Bowman to testify concerning the change in her physical condition and disposition generally. His evidence was to the effect that after the accident she had lost weight, was nervous, restless, petulant, and easy to anger, whereas, her condition before the accident had been just the opposite. It is true as contended by counsel that a layman will not be permitted to testify as an expert concerning diseases or their diagnosis, but, as said in Sovereign Camp, Woodman of the World v. Morris, 212 Ky. 201, 278 S. W. 554, 555:

> "If within his knowledge, a layman may testify as to the strength, vigor, and apparent physical condition of another person, and as to the presence or absence in such person of symptoms indicating disease; also, some forms of disease are so common and so well understood as to be within the knowledge of a layman but he cannot diagnose diseases, or testify as an expert in reference thereto."

See, also, Equitable Life Assurance Society v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703, and Equitable Life Assurance Society v. Spencer, 262 Ky. 478, 90 S. W. (2d) 704, 705. The matters testified to by the father of Miss Bowman were things that might readly have been observed and recognized by himself or by any other layman so closely associated with her. It is further maintained that the evidence of Dr. Kincheloe based on the statement of others than Miss Bowman was incompetent. Counsel recognize the general rule that the history given by a patient to a physician for the purpose of diagnosis or treatment is generally competent, but not so where the physician is making the examination for the purpose of testifying. Dr. Kincheloe treated Miss Bowman for her injuries from the beginning and he made some reference to the history of the case as given by her. He did not testify to any history of the case or any statements made to him by others concerning her condition. He did, however, give an opinion in response to a hypothetical question based on the evidence of Miss Bowman and her father, but this did not bring his evidence within the rule contended for by appellants.

It is most earnestly contended by counsel for appellants that the verdict for Miss Bowman is excessive. She sued for the mental and physical pain and anguish which she has suffered and endured and will continue to suffer and endure as a result of her alleged injuries and not for impairment of her earning power. Miss Bowman's scalp was badly lacerated and a part of it was entirely torn away. According to her evidence, since the accident she had been nervous, restless, troubled with insomnia, suffers severe headaches, continued pain, and has lost weight. We have already referred to the substance of her father's evidence concerning her condition before and since she suffered the injuries. Dr. Kincheloe testified that she sustained a very severe concussion and shock to her nervous system. He testified that such injuries would cause the changed condition testified to by her father. His evidence indicates that there is little certainty as to whether her condition would clear up, stating that it depended upon whether the thickening caused by the injuries to the head would be entirely absorbed and further indicated that if it did not it would likely result in insanity. The scalp and visible injuries to Miss Bowman's head were exhibited

to the jury. There is no contradiction of the evidence of Dr. Kincheloe or of others as to the condition of Miss Bowman or as to the probable duration or the extent of the injuries she suffered, except that it is shown that she has engaged in some social activities since her injuries. If the evidence as to the condition of Miss Bowman as delineated by her witnesses be true, there is no basis for a conclusion that the verdict in her favor was excessive and the credit to be accorded the evidence was a matter solely within the province of the jury.

Complaint is made of statement of counsel for Miss Bowman in closing argument to the jury, but it is not made to appear that there was any objection or that the court's attention was called to the matter at the time the alleged erroneous statements were made. Such objection made for the first time in motion and grounds for new trial cannot be considered on appeal.

Judgment in each case affirmed.