## PINSON TRANSFER CO. v. MUSIC.

Court of Appeals of Kentucky.
May 11, 1951.

Stoll, Keenon & Park, Lexington, for appellant.

W. J. Ward, Paintsville, for appellee.

LATIMER, Justice.

This appeal is prosecuted from a judgment in the sum of $5000 in favor of plaintiff below.

Appellant, Pinson Transfer Company, doing a trucking business is engaged in hauling general commodities in interstate commerce with its authorized operations extending to and from Paintsville, Kentucky. Norman Johnson, the driver of the truck involved in the accident herein, lived at East Point, a village lying outside of Paintsville. On February 9, which was the day preceding the accident, it appears that the truck had on it a quantity of coffee to be delivered on the following day. The truck driver, Norman Johnson, parked the truck on the roadside across from his home on the night of February 9th. On the morning of February 10th Taylor Music, Jr., a seventeen year old boy who lived near the home of Norman Johnson, got into the cab of the truck with the driver. The

record does not disclose any significant conversation between the truck driver and the boy other than that the driver testified that he did not hire the Music boy to go with him and help him and did not invite him to but permitted him to ride with him on the truck. A little later another boy by the name of Virgil DeLong was picked up and rode with the driver and the Music boy into Paintsville and on the premises of the Paintsville Grocery Company where some coffee was to be delivered.

It appears from the testimony that after the truck was driven on the premises of the Paintsville Grocery Company, it was necessary to move other trucks out of the way in order for appellant's truck to be properly placed for unloading. After backing and placing the truck for unloading it appears that the Music boy, the DeLong boy and the truck driver all got out of the truck after it came to a stop and that the two boys went to the rear of the truck, opened the rear door and got into the truck and began moving the coffee from the front of the truck toward the rear. After a lapse of some few minutes the Music boy stuck his head out of the rear of the truck and peeped around the side to see where the driver was and what he was doing. The Music boy stated that just at that time the truck moved and his head was caught between the truck bed and the wall of the grocery building with the resultant injuries.

There is some conflict in the testimony of the Music boy. On direct examination he stated the truck driver backed the truck just as he was peeping. On cross-examination he admitted he did not know whether or not the truck driver was in the cab of the truck when it moved.

The driver of the truck stated that he backed the truck up until the rear of the truck was about a foot from the wall of the building; that he did not put the brakes on but left the truck in gear; and that he was going toward the rear of the truck on the right-hand side when he heard the outcry of the Music boy and saw him come out from under the truck injured

It appears from the testimony that there was snow and ice upon the surface of the grocery premises where the truck was parked.

The cause was submitted to the jury and a verdict returned in favor of the plaintiff in the sum of $5000.

It is insisted here by appellant: (1) that the court should have peremptorily instructed the jury to find for the defendant because the driver of the defendant's truck had no authority to permit the plaintiff to ride on the truck and was not acting within the scope of his employment when he did so; (2) the court should have instructed the jury to find for the defendant because there was no substantial evidence of any negligence on the part of the driver of defendant's truck; (3) the court erred in giving Instruction No. 1; (4) the verdict was contrary to the law in that the jury failed and refused to follow Instruction No. 3; (5) excessiveness of damages.

■ Ignoring the order in which the above alleged grounds of reversal are submitted we direct attention first to the matter of instructions. Instruction 1 reads: "It was the duty of the defendant, Pinson Transfer Company, its agents, servants, and employees, to exercise ordinary care on their part, with the means then at hand, to avoid operating its truck, or leave it standing, as shown in the evidence in this case, to have avoided or prevented the injury to the plaintiff, complained of in the pleadings and evidence herein, and if you believe that they failed to do so, you will find for the plaintiff. Otherwise, you will find for the defendant, unless you believe as instructed in Instruction No. 3."

We note especially "to exercise ordinary care on their part, with the means then at hand, to avoid operating its truck, or leave it standing, as shown in the evidence in this case, to have avoided or prevented the injury to the plaintiff." This in substance was an instruction that it was the driver's duty not to operate the truck or leave it standing as was done. While not positively so, it was the equivalent of a peremptory instruction for the plaintiff in that it wholly

omits any requirement of proximate cause or causal relationship between any alleged negligence of defendant and the injuries to the plaintiff. Instructions should require the finding that any negligence shown must be the proximate cause of the injury complained of. See Prichard v. Collins, 228 Ky. 635, 15 S.W.2d 497; Ware v. Saufley, 194 Ky. 53, 237 S.W. 1060, 24 A.L.R. 500; Interstate Coal Company v. Love, 153 Ky. 323, 155 S.W. 746; Rabold v. Gonyer, 285 Ky. 618, 148 S.W.2d 728; Chesapeake & O. Railway Co. v. Holbrook, 208 Ky. 488, 271 S.W. 583.

■ The giving of this instruction in this manner is reversible error.

■ We now consider the question as to whether or not defendant was entitled to a peremptory instruction. The evidence shows without contradiction that the driver of the appellant's truck had no authority to permit anyone other than employees of the company to ride in this truck. This appears to have been an inexorable rule of the company. The truck driver not only had been notified of this rule but had been furnished with a copy of the ICC rules prohibiting anyone but employees from riding and had signed a receipt therefor. A "No Riders" sign was displayed on the windshield. The rule of law is well recognized that under such circumstances the employer can not be held responsible for injuries to a person thus permitted to ride except in cases where the injuries were inflicted by actions after the discovery that the unauthorized rider is in the position of peril or danger. See Corrigan v. Hunter, 139 Ky. 315, 122 S.W. 131, 130 S.W. 798, 43 L.R.A.,N.S., 187; Armstrong's Adm'r v. Sumne & Ratterman Co., 211 Ky. 750, 278 S.W. 111; Williams' Adm'r v. Portsmouth By-Product Coke Co., 213 Ky. 96, 280 S.W. 479; Wigginton Studio, Inc., v. Reuter's Adm'r, 254 Ky. 128, 71 S.W.2d 14; Slusher v. Hubble, 254 Ky. 595, 72 S.W.2d 39; Electric Bakeries v. Stacy's Adm'r, 252 Ky. 20, 66 S.W.2d 70; Koch's Adm'r v. Koch Bros., Inc., 274 Ky. 640, 119 S.W. 2d 1116.

Appellee, however, without admitting that the Music boy was a trespasser in-jects into the picture this theory: that we should forget the fact that he was an unauthorized rider on the truck; that recognition of the situation should be taken as if the boy had first been seen at Paintsville after the truck had backed up and placed for unloading, at which time the driver had procured the services of the Music boy as a bystander to help or assist in unloading the coffee. While this may appear plausible on its face, it ultimately appears as a limited conception. The fact that the boy entered the cab before the start of the day's delivery can not be ignored. Under the evidence here he started out as a trespasser and there is no evidence that he ever left the truck or quit the ride. On the other hand invitation to assist in the unloading was not shown nor does emergency to unload the cargo enter the picture. In fact there is every appearance of a continuing trespass.

■ The evidence shows that the driver of the truck had no authority to allow the boy to ride or to invite the boy to help unload the cargo. There is nothing to show that the company ever had any information or knowledge that this particular driver or any driver had been in the habit or was accustomed to pick up riders or invite others to assist in unloading. Consequently, the matter must be ultimately determined and controlled by the rule that the company can be liable only if the injuries were inflicted by the negligent action of the driver after he discovered Music in a position of peril. See in addition to the cases cited above: Kentucky Central R. R. Co. v. Gastineau's Adm'r, 83 Ky. 119; Cincinnati, N. O. & T. P. Co.'s Receiver v. Finnell's Adm'r, 108 Ky. 135, 55 S.W. 902, 57 L.R.A. 266; Hatfield v. Adams, 123 Ky. 428, 96 S.W. 583; Clarke v. Louisville & Nashville R. R. Co., 111 S.W. 344, 33 Ky.Law Rep. 797; Derrickson's Adm'r v. Swann-Day Lumber Co., Ky., 115 S.W. 191; Central Kentucky Traction Company v. Miller, 147 Ky. 110, 143 S.W. 750, 40 L.R.A.,N.S., 1184; Powell v. Commercial Standard Ins. Co., 294 Ky. 7, 170 S.W.2d 857.

Since there is no evidence to show such a situation, we can only arrive at the conclusion that the defendant was entitled to a

peremptory instruction. Thus concluding, it is unnecessary to discuss the other grounds as urged.

The judgment is reversed with directions that a peremptory instruction be given should the evidence be substantially the same as in this trial.